## INHABITANTS OF TOWN OF LIBERTY

### *vs.*

## INHABITANTS OF TOWN OF LEVANT.

### Waldo.    Opinion March 7, 1923.

*A divorced father of a child may emancipate such child notwithstanding that the care and custody of such child in the divorce proceedings were decreed to the father, as such a decree does not impose upon him a greater duty than the law imposes upon him in his parental relation. Emancipated minors take the settlement of their father, if he has one in the State, at the time of emancipation.*

In this case the defense was emancipation, but the plaintiff contended that the relation of the father to the son, created by a decree of the court, giving him the care and custody of the boy at the time of his divorce, imposed a legal impediment, or estoppel, to the right of the father, either by written agreement or parental conduct, to place him in the legal status of emancipation; that he was in the hands of the court.

The evidence proved a typical case of emancipation. The decree of the court, giving the father the care and custody of the child, imposed upon him no greater duty than the law imposed upon him from the fact of his parental relation, and whether in the custody of the father or that of the grandparents, his welfare was still in the hands of the court.

On report. This is an action to recover for pauper supplies furnished by plaintiff town to one Mildred Perkins and her two minor children. The only question involved was the pauper settlement of John Edgar Perkins, husband of Mildred Perkins and father of the two minor children. The plaintiff claimed that the father, John Edgar Perkins, never having acquired any pauper settlement of his own, took the pauper settlement of his father, John F. Perkins, when he, John Edgar Perkins, became twenty-one years of age, which was in the defendant town. Defendant claimed that John F. Perkins had emancipated his son, John Edgar Perkins, and as a result, the son on arriving at the age of twenty-one years, did not take the pauper settlement of his father, John F. Perkins, in defendant town. By agreement of the parties the case was reported to the Law Court. Judgment for defendant.

The case is stated in the opinion.

*Dunton & Morse,* for plaintiff.

*George E. Thompson,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

SPEAR, J. This case involves a suit for pauper supplies and comes to this court on report. An admission was offered which made out a prima facie case for the plaintiff. The admission shows that on the 22d day of December, 1920, Mildred Perkins, wife of John E. Perkins, and her two minor children, called upon the town of Liberty for pauper supplies. No question is raised but that the supplies upon proper call were legally furnished by the plaintiff town. John E. Perkins, the father of the children and husband of Mildred Perkins, is the son of John F. Perkins. The admission and testimony show that John F. Perkins on the fifteenth day of September, 1902, became a resident of Levant, resided continuously in that town until John E. Perkins became twenty-one years of age, in 1913. From the foregoing dates and the testimony there is no question but that John F.

Perkins had a pauper settlement in the town of Levant when John E. Perkins, his son, became twenty-one years of age. It further appears that in 1900 John F. Perkins was divorced from the mother of John E. Perkins in the county of Penobscot and that the care and custody of their minor child, John E. Perkins, was given to the father by the court. The defense was emancipation.

We are of the opinion that the evidence proved a typical case of emancipation. We shall allude to the testimony but meagerly. It appears that John F. Perkins, the father of John E. Perkins, whose wife and children were in distress, in 1900, then residing in Bangor, when the boy was eight years of age, made a stipulation in writing, in duplicate, with the grandparents of the boy, whereby they were to take custody of the child, support him and bring him up. The written instrument, which was drawn up by D. Benson Young, was lost and could not be produced at the trial, but John F. Perkins testified that the import of its contents was as follows: "Well, of course a good many years since the paper was made out, and I doubt if I could state it as it is, but as near as I can remember I gave the boy to his grandparents. They were to support him and take care of him all free of charge to me. I gave up right and title to the child as far as controling the child and he gave me a paper that he would do that." In his cross-examination he said, when asked if he did not reserve the right, if he wished to do so, to give the boy a high school education, answered "that is the impression that is in my mind. It was so long I had forgot, but it seems that was it, but to say that it was, I wouldn't." And he further says, that he, having provided for the boy, had lost all interest in him.

It further appears from the uncontradicted testimony, that John F. Perkins, the father, did not hear from the son directly until he received a letter from him dated September 12, 1919, a period of nineteen years, and did not see him for twenty years after he left him with his grandparents.

It is held in *Thomaston* v. *Greenbush*, 106 Maine, 242, that the legal effect of a father's conduct may be sufficient to establish an emancipation of his children; and the general scope of the term is defined by several citations at Page 244. The plaintiff, however, contends that the relation of Perkins to his son, created by the decree of the court giving him the care and custody of the boy at the time of his divorce, imposed a legal impediment or estoppel to the right of the

father, either by written agreement or parental conduct to place him in the legal status of emancipation; that he was in the hands of the court. We think the answer to that contention is, that the decree of the court, giving the father the care and custody of the child, imposed upon him no greater duty than the law imposed upon him from the fact of his parental relation, and whether in the custody of the father or that of the grandparents, his welfare was still in the hands of the court. *State* v. *Smith,* 6 Maine, 462.

The plaintiff further contends, even though the evidence shows emancipation, and the decree of custody does not work an estoppel, that, nevertheless, "under the provisions of the Revised Statutes, Chapter 29, Section 1, Paragraph 2, John Edgar Perkins, after he became twenty-one years of age, took the settlement of his father which is admitted to have been in the defendant town at that time." While a technical construction would seem to justify the contention of the plaintiff in invoking the statute, it is nevertheless true that our decisions have changed the strict wording of the statute in its application to emancipated minors and hold that such minors take the settlement of their father, if he has one in the State, at the time the emancipation is consummated.

Our courts have followed the above interpretation for many years.

In *Lowell* v. *Newport,* 66 Maine, 78, the reasons for giving an interpretation to the statute apparently different from its literal meaning are fully discussed, the result of which is to hold that "the derived settlement of an emancipated minor is that of his father at the time of emancipation and not that acquired by his father at any time thereafter." In *Orenville* v. *Glenburn,* 70 Maine, 353, it was held that "The emancipated child ceases to follow any settlement acquired by the father after such emancipation;" and finally, in *Thomaston* v. *Greenbush,* 106 Maine, 242, it is said, "Being emancipated these minors took at the time of emancipation the settlement which their father then had."

As the case comes up on report, the conclusion of the court is, that the entry must be,

*Judgment for the defendant.*