INHABITANTS OF TOWN OF WINSLOW

*vs.*

INHABITANTS OF CITY OF OLD TOWN.

Kennebec.     Opinion, October 14, 1935.

*Perkins & Weeks*, for plaintiffs.
*William H. Powell, Stanley Needham*, for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J.    Report on agreed statement of facts of an action of assumpsit for pauper supplies furnished the family of Elroy E. Temple, Jr., while he was living in the town of Winslow. When the pauper attained his majority on May 4, 1929, his father had a pauper settlement in the city of Old Town but lost it on May 1, 1932, having at that time lived five consecutive years outside of Old Town without receiving pauper supplies from any source within the State. It is not stated in the report that the pauper was *non compos mentis* when he attained his majority or that he was not at that time fully emancipated. It is agreed that the supplies in suit were furnished during the period from October 7, 1933 to December 24, 1934, and that the necessary statutory notices were sent to the overseers of Old Town and his settlement there seasonably denied.

The statutes of this State governing the settlement of paupers and fixing the liability of towns and cities for their relief is found in Revised Statutes, Chapter 33 as amended. The following provisions are directly applicable to the case at bar:

"A person of age, having his home in a town for five successive years without receiving supplies as a pauper, directly or indirectly, has a settlement therein." Sec. 1, Par. VI.

"Legitimate children have the settlement of their father, if he has any in the State; if he has not, they shall be deemed to have no settlement in the State. Children . . . shall not have the settlement of their father . . . acquired after they become

of age and have capacity to acquire one." Sec. 1, Par. II; P.
L., 1933, Chap. 203, Sec. 2.

"Settlements acquired under existing laws, remain until
new ones are acquired. Former settlements are defeated by the
acquisition of new ones. Whenever a person of capacity to
acquire a settlement, having a pauper settlement in a town,
has lived, or shall live, . . . 5 consecutive years outside of the
town in which he has a settlement after August 1, 1926, with-
out receiving pauper supplies from any source within the
state, he and those who derive their settlement from him lose
their settlement in such town." Sec. 3; P. L. 1931, Chap. 124;
P. L. 1933, Chap. 228.

It is well settled under the pauper statutes that children, when
emancipated, take the pauper settlement their father has at the
time of emancipation, and this settlement continues until they gain
a new one for themselves. *Liberty* v. *Levant*, 122 Me., 300; *Eagle
Lake* v. *Fort Kent*, 117 Me., 134; *Bangor* v. *Veazie*, 111 Me., 371;
*Thomaston* v. *Greenbush*, 106 Me., 242; *Carthage* v. *Canton*, 97
Me., 473. If the emancipation is during minority, the gaining of
a new settlement by the minor can begin only as of the date he
attains majority. It is a person of age who can acquire a pauper
settlement in his own right. *Exeter* v. *Stetson*, 89 Me., 531; *Thom-
aston* v. *Greenbush*, supra; *Bangor* v. *Veazie*, supra; R. S., Chap.
33, Sec. 1, Par. VI. If the emancipation is by becoming of age,
however, the power of the child to gain a new settlement is not
postponed. The word "emancipation", as used in the cases con-
cerning pauper settlements, includes the emancipation implied by
the law when a child becomes of age. *Shirley* v. *Lancaster*, 6 Allen
(Mass.) 31. And it has long been held in this State that when a
child attains his majority, unless he is *non compos mentis*, he is
deemed to have been emancipated. *Monroe* v. *Jackson*, 55 Me.,
55, 57; *Hampden* v. *Troy*, 79 Me., 484. See also *Milo* v. *Gardiner*,
41 Me., 549; *Hampden* v. *Brewer*, 24 Me., 281; *Springfield* v. *Wil-
braham*, 4 Mass., 493; *Andover* v. *Merrimack County*, 37 N. H.,
437; *Gloucester* v. *Springfield*, 2 R. I., 30; 18 *Am. & Eng. Encyc.
of Law*, 789. We see no reason and find no authority for drawing
a distinction in the pauper law between the emancipation which

results from a minor's becoming of age and that which grows out of the voluntary acts or agreements of the parent or child.

In *Thomaston* v. *Greenbush*, supra, affirmed in *Bangor* v. *Veazie*, supra, the minors were emancipated by abandonment and the father thereafter lost his settlement by living five consecutive years beyond the limits of the State, as provided by P. L. 1893, Chap. 269. That statute, as does that part of P. L. 1933, Chap. 228 already quoted, under which the father of the pauper in this case lost his settlement, both statutes now by codification being made a part of the same section, provided that as a result of the loss, "he and those who derive their settlement from him lose their settlement in such town." The Court there said:

> "From a cursory reading of the words 'he and those who derive their settlement from him lose their settlement in such town,' it might be assumed that this covers all who in the past have derived their settlement from him. But further consideration shows that this is not the true construction. It means that those who, at the time he loses his settlement, namely, at the end of five years, are so connected with him as to then have a derivative settlement from him, lose theirs also. The tie of settlement still existing between father and unemancipated minors, his loss is their loss. But when that tie has been severed before the five years expire, then the loss is his alone, because the emancipated children are pursuing an independent course and the expiration of the five years cannot revive the relations between parent and child nor reunite the tie once broken. The statute was not designed to disrupt already acquired settlements in this way. . . . The statute does not speak until the end of five years and when it does speak it has no retroactive force to bring a loss of settlement to those who at one time derived their settlement from such party but do so no longer.

The opinion in *Thomaston* v. *Greenbush*, supra, interpreting the words "he and those who derive their settlement from him lose their settlement, etc." was announced long before the passage of P. L. 1931, Chap. 124, and P. L. 1933, Chap. 228. Under the established rules of statutory construction, it is to be presumed

that the Legislature repeated the words in their later enactments with full knowledge of the judicial construction placed upon them and with the intention that the meaning which had already attached to them should remain unchanged. *Hathorn* v. *Robinson*, 96 Me., 33; *Endlich on the Interpretation of Statutes*, Sec. 367; 25 R. C. L., 992. There are no qualifying or explanatory provisions in the later statutes indicating a contrary intention.

Upon the facts stated, the pauper to whose family supplies were furnished had a legal settlement in the defendant city, and the mandate must be, according to the stipulations of the report

> *Judgment to be entered in the trial Court for the plaintiff for $772.08 with costs to be assessed by the Clerk.*