INHABITANTS OF TRENTON *vs.* CITY OF BREWER.

Hancock.     Opinion, August 3, 1936.

*Percy T. Clarke,* for plaintiff.
*Frank B. Foster,*
*James M. Gillin,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-
SER, JJ.

DUNN, C. J.    In this action under the pauper statutes, Revised
Statutes, Chapter 33, Section 29, as amended by 1931 Laws, Chap-
ter 225, Section 27, plaintiff town gained the general verdict, and
was awarded damages, substantially as claimed. Defendant city, by
motion for a new trial, challenges the verdict.

In 1933, beginning on April 19, and ending with October 3 ; and
again in 1934, February 10 to December 30, both dates inclusive;
one Earland A. Tourtelotte had help, as a pauper, from Trenton.
His wife and children were dependent upon him for support; in
consequence of his impoverished condition, they too were destitute;
the supplies in the account sued on were for Tourtelotte and his
family.

The necessity for pauper assistance, the amount of supplies, the
reasonableness of the charges, or the statute notices and replies, are
not, as the case is submitted, in dispute.

One argument at the bar was whether certain evidence, upon
which the jury, in determining the pauper settlement, should have
passed, escaped consideration.

Earland A. Tourtelotte had been born in wedlock, in Ellsworth, on February 23, 1904.

Key questions in the trial court were: When was Earland Tourtelotte emancipated? and was his father's settlement, under the poor laws, then in Brewer, from having had his home there five continuous years, free from pauperism? R. S., *supra*, Sec. 1, par. VI.

It is accurate enough, as a broad statement, to say that a child, on coming of age, i.e., on attaining the age of twenty-one years, is, by virtue of that fact, emancipated. *Hampden* v. *Brewer*, 24 Me., 281; *Milo* v. *Gardiner*, 41 Me., 549; *Hampden* v. *Troy*, 70 Me., 484.

The word "settlement" means that a person has, on becoming poor and unable to support himself, a right of support from the town where his settlement may be. *Jefferson* v. *Washington*, 19 Me., 293. "Town" and "city," for present purposes, express the same idea. R. S., Chap. 1, Sec. 6, par. XIX.

The pauper settlement of a legitimate child is, by statute, that of his father, if he has one within the State. R. S., Chap. 33, Sec. 1, par. II, (amendments are not here material); *Oldtown* v. *Falmouth*, 40 Me., 106; *Monroe* v. *Jackson*, 55 Me., 55. If the pauper settlement of the father changes during the child's minority, that of the child likewise changes, by operation of law, and regardless of the consent or desire of the parties. *Milo* v. *Gardiner*, supra. Upon emancipation, the child takes his father's pauper settlement, and retains it until he himself acquires a new one. *Lowell* v. *Newport*, 66 Me., 78; *Orneville* v. *Glenburn*, 70 Me., 353; *Liberty* v. *Levant*, 122 Me., 300, 119 A., 811; *Winslow* v. *Old Town*, 134 Me., 73, 181 A., 816. The child, when emancipated, ceases to be a part of the father's family; hence, subsequent acquisition by the father of a pauper settlement does not affect that of the child.

If, for the moment, it be assumed, to give decision direction, that the pauper settlement of the father of Earland A. Tourtelotte, when the latter became of age, was shown to have been in the defendant city; yet another aspect of the case appears to have been overlooked.

"Emancipation," the dissolution of paternal authority during the lifetime of the parents, may take place in one of several ways, during the minority of the child.

It seems to be settled law that the marriage of a minor son, with the consent, and not contrary to the direction of his parents, works complete emancipation. *White* v. *Henry*, 24 Me., 531. When that case was decided, custody and control of an infant, as the law styles a person under age, was solely with its father; now, by statute, with both parents jointly. R. S., Chap. 72, Sec. 43.

Emancipation in infancy severs parent-child relationship as fully as though the child were twenty-one years of age. *Lowell* v. *Newport*, supra. Legal recognition is given to the fact of independent existence. Wharton, Conflict of Laws, Sec. 41.

Emancipation is never presumed, but must always be proved. *Sumner* v. *Sebec*, 3 Me., 223; *Wells* v. *Kennebunk*, 8 Me., 200. It may be implied from circumstances, or inferred from the conduct of the parties. *Wells* v. *Kennebunk*, supra; *Dennysville* v. *Trescott*, 30 Me., 470; *Bucksport* v. *Rockland*, 56 Me., 22; *Lowell* v. *Newport*, supra; *Carthage* v. *Canton*, 97 Me., 473, 54 A., 1104; *Merithew* v. *Ellis*, 116 Me., 468, 102 A., 301.

For instance, contracting the marriage status is generally a matter of notoriety in a town. *Sherburne* v. *Hartland*, 37 Vt., 528. Marriage, in the vicinity, without the parents interposing opposition, might be found to imply emancipation. *Bucksport* v. *Rockland*, supra.

To resume narration:

In the fall of 1919, the pauper's father removed from Ellsworth; he came to Brewer, all the members of his family with him, to remain indefinitely.

He stayed there ten consecutive years, double the time requisite to acquire a pauper settlement by residence. R. S., Chap. 33, Sec. 1, par. VI, cited before. However, the evidence may show that he had been living in Brewer but four years when his son Earland, then in his twentieth year, married.

Earland himself testified that he left Brewer the summer of 1923; his testimony is contended susceptible that he was then married.

The Brewer overseer of the poor, who investigated the claim that the pauper was a charge of that city, attested, on the witness stand, as follows:

"Why, my first act was to look over the city books to see if he had ever been a taxpayer in Brewer. Not being able to find him as a taxpayer I looked over the births and records and found nothing there. Finally the marriage records showed that one Earland Tourtelotte was married, in 1923 I think it was, in Brewer; but we found no further records."

The pauper, in a statement dated June 13, 1932, mentions his eldest child as eight years old. Witnessing, (the trial was at the September Term, 1935, in Hancock,) he said this child was eleven years of age. The evidence might tend to prove that the child had been born in 1924, as early as June or not later than September.

Birth of the child was preceded by the necessary period of gestation. *In re McNamara's Estate*, 181 Cal., 82, 183 P., 552. The usual period of pregnancy in a woman is forty weeks. *Young* v. *Makepeace*, 103 Mass., 50, 51.

Earland Tourtelotte became twenty-one in 1925. His first child may have been both conceived and born while he (Earland) was still an infant; and conceived prior to the acquirement by Earland's own father of a pauper settlement in Brewer.

The parents of the pauper were called to testify, by plaintiff. True, neither was asked whether consent to their son's marriage had been given; but, the case was not being developed on the theory of settlement derivative from the father, on the son's emancipation by marriage. As plaintiff's counsel, with commendable frankness, states:

"The jury was not instructed, the court making no reference to the marriage."

Was Earland Tourtelotte, while a minor, emancipated? If so, where, at emancipation, was his father's pauper settlement?

These were pertinent inquiries. The evidence offered should have been studied by the jury. It could have been found to affect substantial rights essentially.

There may, on occasion, be review of questions of law, on a new trial motion, though this is not compatible with best practice. *Pierce* v. *Rodliff*, 95 Me., 346, 50 A., 32; *Simonds* v. *Maine Telephone, etc., Co.*, 104 Me., 440, 72 A., 175; *State* v. *Meservie*, 121 Me., 564, 118 A., 482; *State* v. *Wright*, 128 Me., 404, 148 A., 141.

Injustice was, or might have been, done on the former trial.

The verdict is set aside, as against law. A new trial is granted.

Other legal propositions are argued; they need not, as decision hinges, be decided.

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*