Michael ARBOUR et al.

v.

Ralph HAZELTON et al.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1987.
Decided Dec. 21, 1987.

Thomas R. Downing (orally), Hardy, Wolf & Downing, Lewiston, for plaintiff.

David W. Austin (orally), Rumford, for Hazeltons.

William C. Nugent (orally), Hunt, Thompson & Bowie, Portland, for Geronda.

Before McKUSICK, C.J., and
NICHOLS, ROBERTS, WATHEN,
SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

The Plaintiff–Purchasers, Michael and Regina Arbour, appeal from the directed verdicts entered in Superior Court, Oxford County, for the Defendant–Sellers, Ralph and Annie Hazelton, and their agent, Alphonse Geronda, in their action for rescission and misrepresentation. The Plaintiffs challenge the trial court's conclusion that the Plaintiffs failed to establish a *prima facie* case of the Defendants' knowledge of, or reckless disregard for, the untruth of the alleged false representations.

We vacate the judgments.

The Defendant–Sellers had engaged Defendant Geronda, a Rumford realtor, to sell their variety store in East Peru. In May, 1981, Plaintiff Michael Arbour met with Defendant Geronda to discuss this opportunity to purchase. Subsequently Geronda represented to him by letter that this was a "typical general store.... Sales include gas, oil, all foods—fresh, frozen, canned, meats and produce.... Sales also include kerosene, beer, ... hardware and sundries.... The past records indicate a gross of over $100,000 recently." The agent also provided an accountant's report verifying that the gross receipts for "goods sold" were over $100,000 in both 1978 and 1979. The report did not define "goods" which, contrary to the assertion in Geronda's letter, included both variety store wares and new lawn and garden equipment. Indeed, sale of that equipment generated approximately one-third of the Sellers' profit.

The first visit to the store by Arbour only confirmed the representation that this was a "typical general store" and that its gross receipts derived from a sale of a "typical general store's" goods. Arbour did not discern that the Hazeltons sold lawn and garden equipment there, but he did observe that Hazelton operated a repair service on the premises. This observation was consistent with the representation in the agent's letter that a garage on the premises was used for repairs of such equipment.

Concerned about the store's profitability, the Plaintiffs twice requested specific profit and loss statements from the agent. Geronda provided only the Hazeltons' tax returns from 1978–1980. These returns reported that the Sellers' gross income was based on sales of "general merchandise." The Arbours, relying on the representations in Geronda's letter, never inquired further about what constituted "general merchandise." Understanding the sale of store wares to constitute the store sales and understanding the store sales to constitute the Hazeltons' gross income, the Arbours believed that these income tax returns reflected the store's actual gross receipts.

Both Arbours visited the store in August, 1981. No promotional materials on the premises indicated that the Hazeltons operated an equipment distributorship there. Mrs. Arbour inspected one bay of the garage after being told by Geronda that Hazelton was repairing something in the closed bay. Geronda told Mrs. Arbour that it was Hazelton's "hobby" to repair equipment. Mrs. Arbour did not regard this information of the Hazelton's hobby of repairing old equipment as notice of his business of selling new lawn and garden equipment.

Although no Defendant explicitly denied the sales of lawn and garden equipment, none likewise corrected the inaccurate representation in Geronda's letter that only the sales of wares of a typical general store made up the store's gross sales for the reported period. The contract for sale that the parties entered into September 25, 1981, did not clarify that salient point either. The only reference in their writing to

such equipment alluded to prior servicing, not prior sales, by the Sellers.[1] Moreover, the store inventory purchased thereunder by the Arbours did not include any new lawn or garden equipment.

The Plaintiffs promptly took over the store in East Peru, and, not realizing that approximately one-third of the store's income depended upon lawn and yard equipment sales, attempted no sales of such items. When the store's early sales yielded a minimal gross, the Arbours consulted Hazelton, who then disclosed to them his prior equipment sales. After unsuccessful attempts to sell the store, the Plaintiffs commenced an action, equitable in nature, against the Sellers for rescission of the contract, cancellation of the Purchasers' promissory note, repayment of the Purchasers' down payment, an acceptance of the surrendered premises, and, in the alternative, an action, legal in nature, for diminution of the value of the store. Plaintiffs subsequently filed a complaint against the Sellers' agent, Geronda, seeking damages for misrepresentation and professional malpractice in misrepresenting the value of the store.[2] Notwithstanding that the relief sought was in part equitable, it appears that the parties acquiesced in trying the case before a jury, and no question in that regard has been raised on appeal.

At the close of the Plaintiffs' evidence, the Superior Court granted the motions for directed verdict of both the Sellers and the agent. The court concluded that the Purchasers had failed to prove by clear and convincing evidence that the allegedly false representations made by the Sellers were made with knowledge of their falsity or

with reckless disregard of their truth or falsity. This conclusion is not error if, after viewing the evidence and all of the reasonable inferences therefrom in the light most favorable to the Plaintiffs, a contrary verdict could not be sustained. *Butler v. Poulin*, 500 A.2d 257, 260 (Me. 1985); *Seiders v. Testa*, 464 A.2d 933, 935 (Me.1983).

We note at the threshold of our analysis that directed verdicts should be granted sparingly, as the exception rather than the rule. *Butler v. Poulin*, 500 A.2d at 260 (quoting *Moore v. Fenton*, 289 A.2d 698, 700 n. 1 (Me.1972)). Only if all reasonable doubts of possible error or uncertainty have been removed should the court direct a verdict. *Moore v. Fenton*, 289 A.2d at 700 n. 1. To avoid a directed verdict in a fraud action a plaintiff must establish a *prima facie* case for each of the five elements by clear and convincing evidence. *Butler v. Poulin*, 500 A.2d at 260 n. 5; *Wildes v. Ocean National Bank of Kennebunk*, 498 A.2d 601, 602 (Me.1985). A defendant is liable for fraud if he: (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it was true or false (4) for the purpose of inducing another to act in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage. *Butler v. Poulin*, 500 A.2d at 260; *Letellier v. Small*, 400 A.2d 371, 376 (Me.1979). *See also Restatement (Second) of Torts* §§ 525, 526 (1977).

▬ The representation in Geronda's letter that the $100,000 in sales came en-

---

1. That portion of the contract provided that:
   The SELLERS agree that [the Sellers] will continue to service the yard and garden equipment, utilizing the two car garage only, in consideration of which the SELLERS agree to let the BUYERS sell said yard and garden equipment as agents of the SELLERS. The SELLERS further agree to pay the BUYERS a 10% commission with relation to the sale of any such yard and garden equipment, with a guaranteed minimum of $1200 annually as compensation.

The Purchasers did not read this offer for future commission sales as notice of the Sellers' prior sales of new equipment and the Hazeltons' inclusion of those sales receipts among the store's gross receipts. They understood this offer to suggest a new enterprise for the Sellers.

2. The Superior Court entered a directed verdict for Geronda on the professional malpractice count because the Plaintiffs failed to prove duty and cause. The Plaintiffs do not challenge that portion of the directed verdict.

tirely from the sale of a "typical general store's" wares, absent any subsequent clarification by the agent, is sufficient evidence of a false representation. In this contract the gross sales figure is a critical fact. The record contains no evidence that the Sellers themselves knew that this misrepresentation was false or that they acted in reckless disregard of whether it was true or false. The Purchasers' evidence established that the Plaintiffs negotiated almost exclusively with the Sellers' agent; the agent provided all of the pertinent financial information. There is no evidence that the Sellers knowingly or recklessly misled the Purchasers or even knew that their agent misled the Purchasers. There is likewise no evidence that the Sellers attempted to conceal information from the Purchasers. Indeed, the Sellers remained two weeks after the closing to help the Purchasers in their take-over of the store.

■ We do, however, find evidence sufficient to withstand a directed verdict that Defendant Geronda, the Sellers' agent, recklessly disregarded the truth in his representations to the Purchasers. He should have been aware that the new equipment sales accounted for a significant percentage of the general store's gross sales. Consequently, he should have known that his letter to the Purchasers was in fact a misrepresentation. Defendant Geronda knew of the Purchasers' concern for the store's profitability, and, responding to that concern, he provided an accountant's report and the Sellers' income tax returns, neither of which disclosed the sales of new equipment by the Sellers. The negotiations gave the Purchasers to understand that the Sellers were selling the entire business that generated the $100,000 gross sales they had reported for income tax purposes. The contract represented that the Sellers were

retaining rental space in the garage only to continue a "hobby" of repairing old lawn equipment. In fact, they were retaining a very profitable portion of the business, and selling the less profitable remainder. The financial information provided to the Plaintiffs clearly did not reveal this and a factfinder could rationally find that the Sellers' agent should have known it.

■ Contrary to the trial court's conclusion, a factfinder could rationally find that the discussion of Hazelton's "hobby" and the offer of commissions on future sales did not put the Purchasers on notice that a significant percentage of the variety store's past gross sales came from the sale of new yard and garden equipment. A factfinder, therefore, could rationally regard the agent's misrepresentations and his alleged belief that it did put them on notice as a reckless disregard for the truth.[3]

■ This evidence, sufficient to withstand a directed verdict as to the Defendant Geronda's recklessness, may also be sufficient to render the Sellers, as the agent's principals, liable in the Purchasers' action for rescission. Under Maine law a principal is liable for the fraudulent misrepresentations made by his agent within the scope of the agent's authority, whether or not the principal knows of the agent's misconduct. *Crowley v. Dubuc*, 430 A.2d 549, 552 (Me.1981); *Nyer v. Carter*, 367 A.2d 1375, 1378 (Me.1977); *Harlow v. Perry*, 114 Me. 460, 462–63, 96 A. 775, 776 (1916); *Restatement (Second) of Agency* § 257 (1958).[4]

Therefore, we vacate the entry of a directed verdict for the Defendants Hazelton as well as the directed verdict for their agent, Defendant Geronda.

The entry is: Judgments vacated.

---

**3.** Although the trial court did not reach the other elements of misrepresentation—inducement, justifiable reliance and damages—there is sufficient evidence of each to withstand a motion for a directed verdict.

**4.** Section 257 provides that:

A principal is subject to liability for loss caused to another by the other's reliance upon a tortious representation of a servant or other agent, if the representation is: (a) authorized; (b) apparently authorized; or (c) within the power of the agent to make for the principal.

Remanded for further proceedings consistent with the opinion herein.

All concurring.