Catherine D. **PETIT,** et al.

v.

**KEY BANCSHARES OF MAINE, INC.,** et al.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1993.
Decided Dec. 27, 1993.

David Gregory (orally), Freeport, Richard E. Poulos, Portland, Richard J. Grahn, Susan F. Drogan, Looney & Grossman, Boston, MA, for plaintiffs.

John J. Aromando (orally), Ralph I. Lancaster (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN and CLIFFORD, JJ.

ROBERTS, Justice.

Catherine D. Petit appeals from a partial summary judgment rendered final pursuant to M.R.Civ.P. 54(b) and entered in the Superior Court (York County, *Brennan, J.*) in favor of defendants Key Bancshares of Maine, Inc. and Key Bank of Southern Maine, Inc. (Key) on the ground of *res judicata.* Petit contends that the claims in the present case state a different cause of action from prior litigation and arose from different operative facts, and that Key's fraudulent concealment of its wrongdoing prevented her from discovering and litigating those claims in earlier suits. Key cross-appeals the trial court's denial of its motions for partial summary judgment on the alternative grounds of the statute of limitations and the "closed circle of indemnity."

We agree with the trial court and affirm the judgment.

## I.

In November 1986, Catherine Petit commenced a civil action against Key Bank and a number of other banks, attorney Leonard Nelson, and the law firm of Bernstein, Shur, Sawyer & Nelson.[1] She charged Key with (1) fraud, (2) breach of implied covenants of good faith and fair dealing, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) intentional interference with an advantageous contractual relationship.[2]

Petit alleged that beginning in 1979, Key's predecessor, Depositors, acting through its

---

1. Catherine Petit was the sole owner of Old Orchard Ocean Pier Company, C.D.P., Inc., and Whiteway Amusements, Inc. Whiteway and CDP were later merged into Old Orchard. Key Bancshares of Maine is the parent company of Key Bank of Southern Maine, and was successor in interest to Depositors Corporation and Depositors Trust of Southern Maine, Inc. ("Depositors"). Three individual lawyers, including Leonard Nelson, were also named as co-defendants. The claims against the law firm and the lawyers have been settled. *See Petit v. Key Bancshares of Maine, Inc.,* 614 A.2d 946 (Me.1992).

2. The fifth count, tortious interference with an advantageous contractual relationship, is not part of this appeal.

president, Marco DeSalle, conspired with Nelson to steal her business by inducing her to pursue the acquisition and operation of a pier and amusement park in Old Orchard Beach, then owned by a trust, with inadequate financing. The inducement consisted of false promises of sufficient financing in the future.[3] In furtherance of the scheme, DeSalle told Petit in January 1979, after she had sought a loan from Depositors, that Depositors had approved a $450,000 participation in a larger loan for her and that he would find other banks to participate in it. He did not tell her, however, that Depositors had approved its own $400,000 loan to her. Petit, frustrated with Depositors' apparent footdragging, consulted Pepperell Trust Company, which expressed interest in participating in the loan.

When Pepperell became the lead bank for the participation loan, Depositors arbitrarily reduced its share of the participation from the promised $450,000, first to $400,000 and then to $200,000. Without informing Petit of any of the reductions, DeSalle further reduced this amount to about $80,000. Throughout the financing process, DeSalle and Nelson attempted to become Petit's partners, suggesting their own private financing in exchange for 51% of the equity. She refused this offer each time it was made, and borrowed $1.35 million from Pepperell and the other banks to purchase the pier and park.

DeSalle's promises of adequate financing never materialized, and in October 1981 he was fired from Depositors. In November 1981 Depositors promised Petit that it would investigate her complaints against DeSalle. By February 1982 Petit could not meet her financial obligations.

In September 1982 Pepperell filed foreclosure proceedings against Petit. Petit filed a counterclaim against Pepperell alleging misconduct and seeking $50 million in damages. Among other charges, she claimed (1) breach of contract as financial and business advisor, (2) breach of loan contract, (3) negligence, (4) breach of fiduciary obligations, and (5) liability resulting from control and domination (described by Petit as "fraudulent").

Although Depositors was not a party, Petit's lawyer had considered naming that bank as a co-defendant.

In March 1983, Petit sued Pepperell and the other banks, including Depositors, that participated in the 1979 loan. Joint and several liability was asserted against Depositors for a number of claims, including (1) alleged wrongful seizure of property, (2) invasion of privacy, (3) interference with advantageous contractual relations, and (4) breach of duty to act with commercial reasonableness.

In April 1983, CDP filed a voluntary petition for bankruptcy. Old Orchard followed in August 1983. Both companies listed the 1982 counterclaim, now with an alleged market value of $55 million and against all the banks, as an asset. In an adversary proceeding within its bankruptcy case, CDP filed a complaint against Pepperell, Depositors, and the other banks for turn-over of the property seized in the foreclosure.

The consolidated bankruptcy case was dismissed with prejudice in December 1983. The 1982 foreclosure suit and the 1983 wrongful seizure suit were dismissed with prejudice in January 1984. The turn-over case was dismissed with prejudice in October 1985. As a result of the bankruptcy filings, Petit lost control of the pier and park.

## II.

We review a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom a summary judgment was granted. *Chasse v. Mazerolle*, 622 A.2d 1180, 1182 (Me.1993). A judgment in a prior civil action will bar a subsequent civil claim if (1) the same parties, or their privies, are involved; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision were, or might have been, litigated in the prior action. *Henriksen v. Cameron*, 622 A.2d 1135, 1141 (Me.1993).

There is no serious dispute as to the first two elements of *res judicata*. Whether the matters presented for decision were or might have been litigated in the

---

3. Nelson was a director of Depositors as well as its attorney and a member of its loan committee.

prior case depends on whether the same "cause of action" was before the court in the prior case. *Currier v. Cyr,* 570 A.2d 1205, 1208 (Me.1990). The measure of a "cause of action" is the "aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Id.* There is no doubt that the instant suit arose out of the same set of operative facts as the earlier suits, namely, the alleged under-capitalization in 1979 of the pier and park by the participating banks and the efforts of DeSalle and Nelson to wrest control of Petit's enterprise. *Id.; see also Brown v. Osier,* 628 A.2d 125, 127 (Me.1993) (in determining whether prior federal action barred state action, causes of action are identical as long as the new complaint grows out of the same series of transactions as the old).

### III.

■ We next consider the question whether Petit could have litigated these matters earlier. A subsequent suit that arises out of the same aggregate of operative facts is barred even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case. *Currier,* 570 A.2d at 1208. Petit contends that the fraud exception to *res judicata* applies in her case. *See Kradoska v. Kipp,* 397 A.2d 562, 568 (Me.1979) ("A justifiable ignorance of facts which, in retrospect, appear to give rise to a claim for relief will mitigate the res judicata effect of a prior judgment."). Her reliance on the exception is not supported by the evidence.

Petit's 1988 affidavit, in which she stated that in November 1981 she was convinced that DeSalle and Nelson had lied to her, manipulated her, never intended to lend her the money promised, and were attempting to steal her business, belies her contention that she did not know of the alleged fraud and therefore could not have asserted it in the prior cases. She further alluded to fraud in the April 1983 turn-over complaint, charging that "Pepperell and others" had acted "inten-

tionally, wrongfully, maliciously, wantonly, [and] recklessly" with respect to the subject matter of the 1982 claims.

■ Petit's attorney stated in a 1992 deposition that the 1982 claims were "tied in with" the current claims, and that he had "considered" bringing a case for fraud or breach of contract or fiduciary duties against Depositors in 1982.[4] He later relied on the same claims in the adversary bankruptcy proceeding in which Depositors was a defendant. In addition, he stated to the court in a 1988 motion hearing that Petit knew in November 1981 that DeSalle and Nelson were "crooks and they were trying to steal [her] business."

Furthermore, Petit's draft motion to amend the 1983 counterclaim sought to include Depositors and add a new claim of fraudulent inducement "which was implicit in all prior pleadings by defendant." The record contains abundant evidence that Petit had knowledge of and could have raised these claims in either the 1982 or 1983 action. We reject Petit's contention that the matter could not have been "conveniently" litigated in any of the earlier suits. *Kradoska,* 397 A.2d at 569 (quoting *Neeld v. National Hockey League,* 439 F.Supp. 446, 458 (W.D.N.Y. 1977) (plaintiff cannot splinter claim and litigate it separately in a piecemeal fashion if she had a reasonable opportunity to raise and litigate the same grounds in the former action)).

Petit maintains that it was not until 1984 that she obtained the "necessary evidence" to support a lawsuit, when her lawyer discovered two memoranda from Depositors and the Attorney General's Office, each purportedly showing DeSalle's misconduct and Depositors' ratification and cover-up. Although the memoranda may evince continued wrongdoing on the bank's part, they do not refute the ineluctable conclusion that Petit was aware of the misconduct in late 1981.

The elements of *res judicata* were satisfied and Petit was unable to show that the fraud exception should apply. The trial court properly granted Key's motion for a summary judgment. As our decision renders

---

4. An attorney's factual admissions are binding on his client, on proof of the attorney-client relation-

ship. *Moulton v. Brown,* 627 A.2d 521, 523 (Me.1993).

Key's cross-appeals moot, we need not address either the statute of limitations or the so-called "closed circle of indemnity" issue.

The entry is:

Judgment affirmed.

All concurring.