**Catherine Duffy PETIT, et al.**

v.

**KEY BANK OF MAINE.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1996.

Decided Dec. 31, 1996.

Ronald G. Caron (orally), Caron & Sullivan, Biddeford, for plaintiffs.

Ralph I. Lancaster, John J. Aromando (orally), Pierce Atwood, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and LIPEZ, JJ.

GLASSMAN, Justice.

Catherine Duffy Petit, Old Orchard Ocean Pier Company, CDP, Inc., and Whiteway Amusements, Inc. (collectively Petit)[1] appeal from the summary judgment entered in the Superior Court (York County, *Brennan, J.*) in favor of Key Bank of Maine on Petit's complaint[2] against Key Bank alleging a claim for damages for its wrongful interfer-

---

**1.** Catherine Duffy Petit was the sole owner of the Old Orchard Beach Pier Company; CDP, Inc. and Whiteway Amusements, Inc. CDP and Whiteway were merged into Old Orchard. *See Petit v. Key Bancshares of Maine, Inc.*, 635 A.2d 956, 957 n. 1 (Me.1993).

**2.** Following our decision in *Petit v. Key Bancshares of Maine, Inc.*, 635 A.2d 956 (Me.1993), affirming the summary judgment entered in the trial court in favor of Key on all but one count, the trial court granted Petit's motion to file a fourth amendment to the original complaint filed in November 1986. It is the fourth amended complaint that is the subject of the present proceedings.

ence with Petit's existing and prospective advantageous economic relationships, *inter alia,* with Pepperell Trust Company.[3] We agree with Petit's contention that because the evidence on the record generates a genuine issue of material fact the trial court erred by granting Key's motion for a summary judgment, and accordingly, we vacate the judgment.

For the purposes of the summary judgment, the following facts are undisputed: At all relevant times, the Depositors Corporation, a predecessor of Key Bank, was the sole owner of Depositors Trust Company of Southern Maine, also a predecessor of Key Bank. Wallace Haselton was the chief executive officer of Depositors Corporation acting on behalf of that corporation and Depositors Trust Company. Robert Mitchell was the president of Pepperell Trust Company. In September 1979, Petit borrowed $1,350,000 from a group of lenders, including Pepperell Trust Company, the lead lender, and Depositors Trust, for the purpose of acquiring a pier and amusement park business at Old Orchard Beach. In the fall of 1981, Petit initiated discussions with the participating lenders for the refinancing of the 1979 loan. In early December 1981, in connection with an ongoing investigation of the Depositors Corporation and the Depositors Trust conducted by the Maine Attorney General's office in conjunction with the Federal Bureau of Investigation with regard to possible violations of state and federal laws, Haselton stated to an agent of the Attorney General's office that Catherine Petit had alleged that Mitchell took an illegal fee or "kickback" in connection with Pepperell's participation in the 1979 loan to Petit, knowing such statement to be false.

On January 8, 1982, Petit met with the 1979 participating lenders to present a refinancing proposal. At this meeting Mitchell refused to speak with Petit, acted in a "cool and aloof" manner toward her, and left the meeting while it was in progress. By a letter dated February 3, 1982, Mitchell informed Petit that Pepperell and the other banks that had participated in the 1979 loan had declined her refinancing proposal and that "unless your loan account is brought current by March 4, 1982, foreclosure proceedings will commence in order to effect collection." In September 1982, Pepperell filed foreclosure proceedings for the September 1979 loans. Thereafter, Petit filed for bankruptcy resulting in her loss of ownership of the amusement park and pier.

Following Key Bank's answer to Petit's fourth amended complaint, it filed a motion for a summary judgment on the ground that the record before the court does not generate any genuine issue of material fact and that Key is entitled to a judgment as a matter of law. By its memorandum in support of its motion, Key Bank focused on the inability of Petit to establish that Mitchell knew of Haselton's false statement prior to February 3, 1982, and alleged that, although adequately pleaded, Petit could not establish causation or, accordingly, that Mitchell justifiably relied on such statement as true or acted on it to Petit's damage. Attached to and incorporated in Petit's responsive memorandum opposing Key Bank's motion, is an affidavit of Craig J. Rancourt, a personal friend of Mitchell, asserting in pertinent part that during conversations with Mitchell in December 1981 and January 1982: (1) "Mitchell stated ... Petit had accused him of accepting a bribe in connection with loans from Pepperell to Petit," (2) "expressed extreme personal animosity toward Mrs. Petit," and (3) "stated ... that he intended to foreclose on Petit's loans."

At the January 25, 1995, hearing on Key Bank's motion, it advanced the same argument set forth in its memorandum and argued against the trial court's consideration of the Rancourt affidavit on the ground that "it was late in the discovery period" and that it was hearsay. In the course of the hearing, and in response to Key Bank's argument that discovery had closed, the trial court advised Key Bank it could conduct further discovery if it did so prior to the court's ruling on the

---

**3.** By the present complaint, Petit alleges that Key wrongfully interfered with Petit's advantageous economic relationships with "Pepperell Trust Company, the participating banks, the United States Small Business Administration, the Town of Old Orchard Beach, and the businesses dealing with Petit's pier and amusement park businesses."

summary judgment motion. Key Bank chose to rely on its argument on that issue.

■ By its order dated May 4, 1995, the trial court granted the motion for a summary judgment in favor of Key Bank, stating:

On the record before this Court, as a matter of law, Plaintiffs cannot prove all of the essential elements necessary under Maine law to support their claim for tortious interference with advantageous economic relationships. Specifically, Plaintiffs cannot on that record carry their burden to prove a causal connection between the tortious interference alleged and termination of the economic relationship alleged.... For purposes of this Motion, I have considered Mr. Rancourt's affidavit for its substantive value. Notwithstanding this affidavit, Plaintiff has failed to generate genuine issues of material fact requiring trial.

From the judgment entered in accordance with the court's order, Petit appeals.

"A summary judgment is proper when the party that bears the burden of proof of an essential element at trial has presented evidence that, if it presented no more, would entitle the opposing party to a judgment as a matter of law." *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me.1996). In our review of the grant of a summary judgment, we view the evidence in the light most favorable to the nonprevailing party and independently determine whether the record supports the trial court's determination that there is no genuine issue of material fact and the prevailing party is entitled to a judgment as a matter of law. *Id.*

Relying primarily on the Rancourt affidavit, as Petit did before the trial court, Petit contends the record contains sufficient evidence to generate a genuine issue of a material fact to be determined by a factfinder at the trial of this case as to whether the false statement of Haselton caused the termination of the advantageous economic relationships alleged by Petit. Viewing that affidavit in the light most favorable to Petit, as we must, we agree with Petit's contention. Accordingly, we conclude that it was error for the trial court to grant Key Bank's motion for a summary judgment in its favor.

Contrary to Key Bank's contention, we find no error in the trial court's consideration of the Rancourt affidavit, nor do the assertions contained in the affidavit constitute inadmissible hearsay. The affiant's first assertion is not hearsay because it is not a statement "offered in evidence to prove the truth of the matter asserted." M.R.Evid. 801(c). The second and third assertions are admissible pursuant to M.R.Evid. 803(3) as statements of Mitchell's "then existing state of mind...."

Although not raised by either of the parties before the trial court or before us, some time after oral argument on this case we requested that each of the parties file a supplemental brief addressing the standard of proof required to allow a plaintiff to prevail on a claim for the wrongful interference with existing and prospective advantageous economic relationships. We made the request in the interest of judicial economy, being cognizant that we have not previously specifically addressed the precise issue, that it may become an issue in any future pretrial proceedings, that it will be essential for the guidance of a factfinder at the trial of this case, that this proceeding has been pending since 1986, and that the present appeal is the third pretrial appeal in the course of this litigation.

■ We have previously stated that the "[i]nterference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995). We have also previously set forth the elements of interference by "fraud" as: "(1) mak[ing] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Grover v. Minette–Mills, Inc.*, 638 A.2d 712, 716 (Me. 1994).

■ We have long recognized and applied the general rule that a plaintiff's burden of proof in a civil action is to establish each factual element of a claim by a preponderance of the evidence. Notwithstanding this general rule, in certain circumstances, including civil actions involving allegations of fraud, we have required the higher standard of clear and convincing evidence. *See, e.g., Arbour v. Hazelton,* 534 A.2d 1303, 1305 (Me. 1987) (stating clear and convincing evidence standard for claim that real estate agent of defendant-seller had fraudulently misrepresented source of store's gross sales). *But see Harmon v. Harmon,* 404 A.2d 1020, 1026 (Me.1979) (stating preponderance of evidence standard for claim of tortious interference by fraud and undue influence with plaintiff's expected legacy).

■ The question before us is whether to extend application of that higher standard of clear and convincing evidence to the proof required for the "fraud or intimidation" element of the tort of wrongful interference with an advantageous economic relationship. We decline to do so.

Application of the higher standard of proof apparently arose in courts of equity when the chancellor faced claims that were unenforceable at law because of the Statute of Wills, the Statute of Frauds, or the parol evidence rule. Concerned that claims would be fabricated, the chancery courts imposed a more demanding standard of proof. The higher standard subsequently received wide acceptance in equity proceedings to set aside presumptively valid written instruments on account of fraud. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389 n. 27, 103 S.Ct. 683, 691 n. 27, 74 L.Ed.2d 548 (1983) (citations omitted). Thus, the clear and convincing requirement "was first applied in equity to claims which experience had shown to be inherently subject to fabrication, lapse of memory, or the flexibility of conscience." Note, *Appellate Review in the Federal Courts of Findings Requiring More Than a Preponderance of the Evidence,* 60 Harv.L.Rev. 111, 112 (1946) (cited in *Huddleston,* 459 U.S. at 388 n. 27, 103 S.Ct. at 690 n. 27); *see also* Note, *Horner v. Flynn: A Preponderance of Clear & Con-*

*vincing Evidence,* 28 Me.L.Rev. 240, 241–42 (1976). As one commentator has explained,

> [c]onceding the validity of policies which the parol evidence rule and the Statutes of Wills and Frauds were designed to carry out, the chancery courts compromised between becoming a mecca for the trumped-up prayer for relief and refusing altogether to mitigate the stern fulfillment of these policies in the law courts, by granting relief only in cases where the evidence in support of this type of claim was "clear and convincing."

60 Harv.L.Rev. at 112.

Such fears that innovative plaintiffs would fabricate equitable claims regarding documents to avoid restrictions at law were the impetus for adoption of a higher proof requirement at equity in Maine. *Horner v. Flynn,* 334 A.2d 194, 196–200 (Me.1975). The equitable standard of proof, however, was in fact a modified preponderance of the evidence standard. *See, e.g., Parlin v. Small,* 68 Me. 289, 290–291 (1878) ("A deed seen and read as this was is a wall of evidence against oral assaults, to begin with. It should not be battered down for alleged deceits or misunderstandings, unless the proof of them is clearly and abundantly established. The plaintiff must prevail, *not only upon a preponderance of the evidence, but such preponderance must be based* upon testimony that is *clear and strong, satisfactory and convincing.*" (Emphases added)). In *Horner* we reviewed an action for common law fraud, traced the history of the relevant equity case law, and preserved the contours of the equitable formulation of the standard of proof. 334 A.2d at 196–200. *Horner* affirmed the standard that held the plaintiff, to "meet his burden of proof by a preponderance of the evidence[,] [must produce] evidence having strong capability to induce belief.... [such that] the jury should be told that because of the nature of the issue, i.e., fraud, evidence will constitute *preponderance* only if it is *clear evidence, convincing evidence and unequivocal evidence.*" 334 A.2d at 200 (emphases added). Moreover, *Horner* specifies that the adjectives used in the case law to describe the higher standard of proof "were intended to describe the *quality* of the

evidence required and not the *extent to which the factfinder must be persuaded or convinced." Id.* Thus, in *Horner,* we did not adopt a different standard of proof, but rather required a higher quality of evidence.[4]

We later overruled *Horner's* formulation of the higher standard, after a lengthy discussion of the difficulties with its application, in *Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 152–54 (Me.1984) ("We adopt the ... definition [of "clear and convincing evidence"] by which the party with the burden of persuasion may prevail only if he can 'place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are "highly probable".'" (citing *Colorado v. New Mexico,* 467 U.S. 310, 317, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247 (1984) (determination of water rights between states)). · In *Taylor,* we modified the standard of proof from that of "beyond a reasonable doubt" to that of "clear and convincing" when determining the eligibility for modified release treatment of a criminal defendant found not guilty by reason of insanity. *Id.* at 150–51 (collecting cases where "a reasoned balancing of all the interests, public and private, that are implicated in the factual determination" justifies adoption of the higher standard necessary to meet "the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions" involved in those adjudications).[5] However, neither equitable nor common law

fraud was alleged in *Taylor,* which overruled *Horner* without addressing the questionable transferability of the higher standard of proof to common law fraud actions that do not raise issues of document fabrication. 481 A.2d at 149–50, 154 (noting only the appropriateness of using the higher standard in "equity-type cases" of fraud); *cf. Huddleston,* 459 U.S. at 388–90, 103 S.Ct. at 690–92 (declining to depart from the preponderance of the evidence standard for purposes of securities fraud actions given the questionable pertinence of the historical reasons for imposing a higher standard of proof in fraud cases in equity and at common law).

The case before us is a tort dispute between private parties that involves no reliance interest in the validity of a written document, and presents neither one of the statutory causes of action in which a higher standard of proof has been applied, nor the balancing of public and private interests of the kind at stake in *Taylor,* 481 A.2d at 150–51, nor the "constitutional and other policy considerations" identified in *Taylor* as justifying the higher standard. The rationales advanced in other jurisdictions for importing a higher standard of proof into the common law fraud context never have been emphasized in our case law and are of questionable persuasiveness.

■ Thus, we conclude that in a cause of action seeking damages for the wrongful in-

---

4. According to one commentator, in the process of importing the equitable standard of proof into the common law fraud context, *Horner* altered the traditional allocation of functions between the court and the jury. Note, 28 Me.L.Rev. 240 (1976). Whereas in equity the court determines whether both the subjective degree of belief in the evidence (burden of persuasion) and the belief-inducing capacity or quality of the evidence (burden of production) are met, at law those functions are assigned to the jury and the court, respectively. Under the *Horner* formulation, the jury in common law fraud cases must both "be convinced by a preponderance of the evidence as a measure of persuasion, [and] find the evidence to be of a clear and convincing quality.... [essentially a] delegation of a judicial function to the jury." *Id.* at 245–48; *accord Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 153–55 (Me.1984). *Taylor* addresses this problem by converting the formulation to a straight "clear and convincing" standard of proof, but without addressing the appropriateness of importing

such a standard into common law fraud cases that involve no questions of document fabrication. *Id.* at 149–50 (noting the appropriateness of a higher standard of proof only in "equity-type cases" of fraud).

5. For other cases involving the balancing of public and private interests in determining that the correctness of factual conclusions be by clear and convincing evidence, *see, e.g., Lalime v. Lalime,* 629 A.2d 59, 60 (Me.1993) (citing *Carter v. Carter,* 419 A.2d 1018 (Me.1980)) (claim that transfer of property during marriage from one spouse to another not transfer to marital estate to rebut presumption it is gift to marital estate); *Dolloff v. Dolloff,* 593 A.2d 1044, 1045 (Me.1991) (citing *Russo v. Miller,* 559 A.2d 354, 357 (Me. 1989)) (claim of undue influence to attack validity of deed); *Maine Human Rights Comm'n v. City of Auburn,* 425 A.2d 990, 995–96 (Me.1981) (contention that for nondiscriminatory reasons plaintiff would not have been hired to rebut prima facie proof of hiring discrimination).

terference with an advantageous existing valid contract or prospective economic advantage, through fraud or intimidation, there exists no compelling reason requiring the factfinder to have a higher degree of confidence in the correctness of its factual conclusions than can be established by a preponderance of the evidence. If punitive damages are sought, those damages must be established by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or the conduct must be so outrageous that malice is implied. *Grover v. Minette–Mills, Inc.*, 638 A.2d at 717–18.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

ROBERTS, J. and LIPEZ, J. concurring.

CLIFFORD, Justice, with whom WATHEN, Chief Justice, joins concurring in part and dissenting in part.

I agree that summary judgment was improperly granted, the judgment must be vacated, and the case remanded to the trial court. I also agree that clear and convincing evidence should not be required for all of the elements of tortious interference with advantageous economic relationships.[1] I disagree, however, that we should abandon our heretofore consistent requirement that the clear and convincing standard of proof be applied to the fraud element of Petit's cause of action. Accordingly, I respectfully dissent.

To recover for tortious interference with advantageous economic relationships, a plaintiff must prove that the defendant acted fraudulently or with intimidation. *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 50 (Me.1996); *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me.1995). Fraud is a unique kind of conduct to which different rules historically have been applied. The procedural rules require that the circumstances constituting fraud be pleaded with

particularity. M.R.Civ.P. 9(b). Moreover, a party must prove fraud by clear and convincing evidence. *Butler v. Poulin*, 500 A.2d 257, 260 n. 5 (Me.1985). The Court's opinion concludes that this is no longer always the case for fraud actions in Maine.

Contrary to the position adopted by the Court, a higher standard of proof has been required for fraud not only when written instruments or documents are disputed but also when other fraudulent conduct is alleged. We stated in *Horner v. Flynn*, 334 A.2d 194 (Me.1975), that

> [e]xperience has taught us that in some types of disputed fact situations—such as where it is sought by oral evidence to dispute the terms of a written instrument *or where it is claimed that the conduct of a party, which on the surface appears to be unobjectionable, had an underlying fraudulent purpose—evidence which is of dubious probative value will not convince reasonable minds.* Both this probability and strong policy considerations in assuring reliance on written agreements impel courts to scrutinize carefully efforts to dispute orally what one has asserted in writing. *Similar considerations argue against ascribing fraudulent intent to conduct which is otherwise not actionable.*

*Id.* at 200 (emphasis added). Nevertheless, whatever *original* historical justification required a higher burden of proof, we consistently have concluded without exception that all fraud actions, not only those concerning documents, require clear and convincing evidence. *Mariello v. Giguere*, 667 A.2d 588, 590–91 (Me.1995) (oral representation as to quality and type of windows); *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me.1993) (intent to perform option contract at time defendant entered into it); *Estate of Paine*, 609 A.2d 1150, 1153 (Me.1992) (failure of conservator to inform plaintiff or court of conveyance of assets to guardian); *Stearns v. Emery–Waterhouse Co.*, 596 A.2d 72, 75 (Me. 1991) (equitable estoppel based on promisor's fraudulent conduct can avoid application of

---

1. I agree with the Court that, except for the element of fraud, the burden of proof applicable to the *other* elements of the wrongful interference with existing and prospective economic relationship, i.e., the existence of a relationship and the

causal connection between the fraud and the interference with the economic relationship and the damages, need be proven only by a preponderance of the evidence.

statute of frauds in breach of oral contract action); *Arbour v. Hazelton,* 534 A.2d 1303, 1305 (Me.1987) (real estate agent's representation to purchasers of variety store); *Butler v. Poulin,* 500 A.2d 257, 260–61 (Me.1985) (oral statements concerning adequacy of parts of house); *Wildes v. Ocean Nat'l Bank,* 498 A.2d 601, 602 (Me.1985) (representations by bank as to amount mortgagor could borrow); *Horner v. Flynn,* 334 A.2d 194, 200, 203 (Me.1975).[2] *See also F.D.I.C. v. Proia,* 663 A.2d 1252, 1254 n. 2 (Me.1995) (clear and convincing evidence necessary under Maine Fraudulent Transfers Act, 14 M.R.S.A. §§ 3571–3582 (Supp.1996)); John Henry Wigmore, WIGMORE ON EVIDENCE § 2498, at 424 (1981 Chadbourne Rev.); Field, McKusick & Wroth, MAINE CIVIL PRACTICE § 60.8, at 76 (1970) (fraud must be proved by clear and convincing evidence *in all cases* where it is asserted) (emphasis added); Zillman, Simmons & Gregory, MAINE TORT LAW, § 11.03, at 11–4 (1995). The motivating factor in these cases is the nature of fraud, not that the plaintiff asserted a particular species of the cause of action. Fraud involves perniciousness, deception, or moral outrageousness that results in injury to the plaintiff.[3] Indeed, in *Horner,* we explicitly stated that more than the ordinary proof is required "because of *nature* of the issue, i.e., fraud...." 334 A.2d at 200 (emphasis added).

In *Taylor v. Commissioner of Mental Health,* 481 A.2d 139 (Me.1984), we abandoned the "clear and convincing evidence" standard of proof formerly used and set out in *Horner v. Flynn.* Pursuant to that standard, fraud had to be proved by a preponderance of the evidence and, in addition, with a *special* requirement that the *quality* of that evidence be clear and convincing, i.e., " *'full, clear, and decisive.'* " *Horner v. Flynn,* 334 A.2d at 200 (quoting *Strout v. Lewis,* 71 A. 137, 138, 104 Me. 65, 68 (1908)) (emphasis in original). We abandoned the relationship of clear and convincing evidence and the quality of evidence and adopted a definition of clear and convincing evidence that refers to an intermediate standard of proof. To meet a clear and convincing evidence standard means that the "party with the burden of persuasion may prevail only if [she] can 'place in the ultimate factfinder an abiding conviction that the truth of [her] factual contentions are 'highly probable.' '" *Taylor v. Commissioner of Mental Health,* 481 A.2d at 153 (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437–38, 81 L.Ed.2d 247 (1984)). All actions requiring clear and convincing evidence now are subject to this intermediate "highly probable" standard of proof. *Taylor* left no action to which clear and convincing evidence applied, including actions involving fraud, subject to a preponderance of the evidence standard of proof.[4] *Taylor* does not *specifically* discuss fraud because the issue in *Taylor* had nothing to do with fraud.

I agree that a higher standard of proof should be imposed only when a balancing of the public and private interests that are implicated in the factual determination require that the factfinder should have a higher degree of confidence in the correctness of factual conclusions. *See Taylor v. Commissioner of Mental Health,* 481 A.2d at 150 (citation

---

**2.** The language in *Harmon v. Harmon,* 404 A.2d 1020, 1026 (Me.1979), cited by the Court to support a preponderance standard is dictum; we have never cited it for that proposition.

**3.** *See Eldridge v. May,* 150 A. 378, 379, 129 Me. 112, 115 (1930) ("Fraud in equity includes all willful or intentional acts, omissions, and concealments which involve a breach of either legal or equitable duty, a trust or confidence, and are injurious to another, or by which an undue or unconscientious advantage is taken over another.") (citation omitted); *Great Northern Mfg. Co. v. Brown,* 92 A. 993, 993, 113 Me. 51, 53 (1915) (" 'Fraud has been defined to be any cunning, deception or artifice used to circumvent, cheat or deceive another.' ") (citation omitted).

**4.** In *Butler v. Poulin,* 500 A.2d 257 (Me.1985), we noted that a plaintiff in a fraud action must prove every element of her claim by "clear and convincing evidence, that is, evidence that establishes every factual element to be highly probable." *Id.* at 260 n. 5. In articulating the standard, we explicitly stated that *Taylor* had modified *Horner v. Flynn.* *See also Wildes v. Ocean Nat'l Bank,* 498 A.2d 601, 602 (Me.1985) (citing *Taylor* as a modification of *Horner v. Flynn*); *Lavery v. Kearns,* 792 F.Supp. 847, 870 (D.Me.1992) (citing *Horner v. Flynn* for the continuing principle, after *Taylor,* that each of the elements of fraud must be proved by clear and convincing evidence).

omitted). This is such a case. In our free economy, economic relationships constantly change, and breach of contract remedies are available to plaintiffs when others interfere with those relationships.[5] A tort action providing redress for acts not wrongful in and of themselves, however, undermines our interests in competition and freedom of individual action. Consequently, we have achieved a comfortable balance between the two by holding that only on proof of fraud or intimidation may a plaintiff recover in *tort* for interference with contractual relations. Lowering the burden of proof in fraud actions upsets that balance. I would not choose to abandon our long-held requirement that fraud be proved by clear and convincing evidence in a *tortious interference* cause of action.

Moreover, the position adopted by the Court in this case could result in future litigants choosing the form of action and the

forum for that action solely on the basis of the quantum of proof required. *See Plimpton v. Gerrard,* 668 A.2d 882 (Me.1995) (action for tortious interference with an expectancy or legacy properly brought in Superior Court; action to set aside will on the basis of undue influence properly brought in Probate Court). The Court's conclusion marks a change in the long held standard of proof for fraud actions not concerning documents. In my view, the change is unwise and unjustified. On remand, I would require clear and convincing evidence to prove the conduct constituting the fraud.

---

**5.** One commentator has noted in discussing intentional interference claims that

> [I]n our economy, competitive acts are often encouraged and rarely considered to be wrongful in and of themselves. Usually, courts see a need to balance the protection of one party's interest in the future enjoyment of economic gain against society's concern that competition be unhampered and the interfering party's right to freedom of action be protected.

James V. Telfer, *Interference With Prospective Gain: Must There Be A Contract?,* 22 San Diego

L.Rev. 401, 404 (1985). For an interesting discussion of the history and validity of the tort of interference with advantageous economic relationships, see Gary D. Wexler, *Intentional Interference with Contract: Market Efficiency and Individual Liberty Considerations,* 27 Conn.L.Rev. 279 (1994); Harvey S. Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine,* 49 U. Chi. L.Rev. 61 (1982).