STATE OF MAINE　　　　　　　　SUPERIOR COURT
PENOBSCOT, SS.　　　　　　　　CIVIL ACTION
　　　　　　　　　　　　　　　Docket No. CV-05-9

DONALD L. GARBRECHT
LAW LIBRARY

JAN 2 5 2008

FILED & ENTERED
SUPERIOR COURT
JAN 0 4 2008
PENOBSCOT COUNTY

Norma Hersom,
　　Plaintiff

　　v.　　　　　　　　　　　Decision and Judgment

Liberty Mutual Group,
　　Defendant

　　　　Hearing on the complaint was held on June 5, 7, 8 and 9 and December 26, 2006. On each hearing date, plaintiff Norma Hersom was present with counsel, and a representative of defendant Liberty Mutual Group appeared with counsel. Through her complaint, Hersom seeks recovery under a homeowner's insurance policy issued by Liberty, following a fire in June 2003 that caused substantial damage to her camp located in Lincoln, Maine. Hersom pursues this claim as one for breach of contract.[1] For the reasons set out below, the court finds that the fire was the product of an intentional act and that Hersom participated in the events leading to the fire. Therefore, under the insurance policy, Liberty is not obligated to pay her for the fire loss. The court denies her claim and, pursuant to statutory authority, awards Liberty its attorney's fees and costs.

　　　　Hersom purchased the camp on a date not clearly revealed in the record. The structure is located on land leased from a third-party and abuts a lake or pond. Hersom paid $25,000 to buy it and then, possibly at the recommendation of the insurance agency where she bought the Liberty insurance policy, insured it for $38,000. The policy excludes coverage for "any loss arising out of any act committed. . .by or at the direction of you [Hersom]. . .and. . .with the intent to cause a loss." *See* defendant's exhibit 16. The policy at issue here provided coverage for a one-year period ending on June 27,

---

[1] Hersom's complaint also alleged claims of unjust enrichment and breach of fiduciary duty. At the close of her case-in-chief, the court granted Liberty's motion for judgment as a matter of law on those two counts, leaving only Hersom's claim for breach of contract.

1

2003. Four days prior to the last day of that policy period, neighbors reported a fire in the camp. The Lincoln Fire Department responded and was able to suppress the fire, but only after it caused considerable damage to the building. In September 2003, Hersom submitted a claim for $33,000 for the fire loss. *See* defendant's exhibit 63.

The court first finds that the fire was caused by an intentional human act. This finding is based, first, on the results of the investigation of the fire scene, which eliminated other causes for the fire, and, second, on extrinsic evidence implicating Hersom in the circumstances of the fire.

The fire was investigated by state officials, and Liberty also conducted an investigation through independent consultants. Those investigations did not reveal any meaningful evidence that the fire had an accidental or non-human origin. The camp was not being used or occupied when the fire began. As is revealed by burn patterns, the area of the fire's origin was on an interior wall or the floor in the bathroom, which is located on the side of the camp closest to a road and furthest away from the water. The fire began near an electrical service entrance cable that connects the meter and the electrical service panel. The meter is the outside of the exterior wall, and the panel is on the inside of that wall in the bathroom. Although there is evidence of an arc (which is an indication of a malfunction) on the cable, the cable did not cause the fire to start. If the fire began in the cable, that is, if the cable had malfunctioned, then the insulation for the cable would have appeared differently than it did. Additionally, the floor immediately below the cable was heavily damaged. Damage of this magnitude could not have been caused by a fire that originated in the cable, which was above the floor. Therefore, despite the physical proximity to the service entrance cable to the origin area of the fire, the former did not cause the latter.

Beyond this, the circumstances of the fire scene eliminated any innocent explanation for the fire. For example, the investigators ruled out, as possible causes and origins of the fire, the electrical meter box located on the outside wall of the camp; the connection of the exterior power line to the camp itself; interior wiring, switches and outlets; the baseboard heater in the bathroom and other elements of the heating system; the electrical panel itself; the water heater; the woodstove and fireplace; kitchen appliances; and damage caused by animals.

2

In July 2003, the investigation came to include an independent expert who was qualified and competent to examine whether a fire can be attributed to an electrical cause. Prior to that time, the other investigators (both public and private) could only conclude that the cause of the fire was undetermined, subject to the analysis of the possible role of electricity and electrical equipment and appliances. When the electrical expert eliminated electrical causes for the fire, this left only an intentional act as the cause.

Although the physical evidence associated with the fire scene is probably sufficient by itself to establish the probability of arson, extrinsic evidence provides additional support for that conclusion. This evidence is relevant not only to the question of whether the fire was set intentionally, but it also bears on Hersom's own role in the loss.

Hersom has consistently denied that she had any involvement in the fire. In fact, she was out of state when the fire occurred. Those denials are overshadowed by persuasive evidence the she arranged for her brother-in-law, Roger Weston, to set the fire so that she could try to collect the insurance proceeds. Weston is married to Hersom's sister, Roxanne, with whom she has a close relationship involving frequent contact. The most powerful evidence implicating Hersom lies with similar but completely independent accounts of her involvement provided by her sister, Donna Stanley, and a former friend, Julie Buzzell. The court accepts their testimony as credible.

In the spring of 2003, which was not long prior to the fire, Hersom told Buzzell that she (Hersom) was facing financial problems and that the "only way out" to gain relief from this pressure would be for the camp to burn, allowing her to collect the insurance proceeds. In fact, Hersom was considerably behind in many of her financial obligations. She had not paid municipal property taxes on her principal residence in Glenburn, and in fact in May 2003, the Town of Glenburn filed a tax lien certificate against the property there. *See* defendant's exhibit 29. Additionally, she had failed to pay the taxes on the camp itself. *See* defendant's exhibit 30. (Although the Town of Lincoln filed a tax lien subsequent to the date of the fire, the tax payment was overdue as of June 2003.) Her state income taxes from 2001 were outstanding. *See* defendant's exhibit 31. Similarly, she had not paid her federal income taxes from the same tax year, and they were outstanding at the time in June 2003. *See* defendant's exhibit 56. She was

3

routinely late with payments to creditors, such as medical providers, a student loan obligee and the mortgagee on her Glenburn house. At the time of the fire, Sears had terminated her credit with the company. Two weeks prior to the fire, a local fuel company had retrieved a propane tank from her residence because she in arrears on her account. *See* defendant's exhibit 15. This followed months of efforts by the utility to collect the arrearage. *Id.* The camp needed repair work that would cost Hersom between $2,000 and $5,000. Further compounding this financial difficulty was the May 2003 expiration of a spousal support order requiring her former spouse to pay $525 per month. *See* defendant's exhibit 11.

Although Hersom was unable to pay many of the debts she owed to various creditors, the insurance policy with Liberty was fully paid as of the date of the fire.

Both at trial and in pretrial proceedings, such as several examinations under oath, Hersom has stated that she was unaware of many of these debts. To the extent that Hersom actually knew that she was in financial difficulty, she would be motivated to find a source of relief. Beyond such information that she acknowledged, however, Hersom was extraordinarily evasive in her trial testimony on these financial matters and professed a remarkable level of willful ignorance of many aspects of her financial predicament. The court finds it difficult to believe that there were as many holes in the state of Hersom's knowledge about her financial condition as she would suggest.

This evidence provides collateral support to Buzzell's testimony that Hersom articulated a plan to realize needed cash through a fire at the camp. Independent of its corroborating effect, this evidence also persuasively reveals a motivation for Hersom to arrange for the camp to be burned.

For a time, Buzzell harbored animosity toward Hersom because of Hersom's relationship with Buzzell's daughter. Buzzell readily acknowledged this history. However, Buzzell has repaired her relationship with her daughter. Therefore, if there once existed a reason for Buzzell to falsely accuse Hersom, that reason no longer existed at the time of trial, when Buzzell testified. The court has considered this aspect of the evidence and does not find that it is a basis to discount Buzzell's testimony.

The court also credits Stanley's account of a conversation several days after the fire. Weston admitted to Stanley that he had set the fire pursuant to a plan with Hersom,

4

where Hersom would pay Weston $10,000. To Weston, however, it did not appear that Hersom would follow through with that payment, and so Weston solicited Stanley to approach her father (also Weston's father-in-law and Hersom's father) to get that money. Weston believed that the father would be willing to provide that assistance for the benefit of Weston's wife.

There are several reasons why Stanley's testimony is credible.

First, she attributes to Weston information about the way he started the fire. Weston, according to Stanley, said that he used rubbing alcohol as an accelerant. The fire scene did not reveal the presence of any accelerant. However, rubbing alcohol *is* an accelerant, and it is one that does not leave evidence that it was used. Thus, the use of rubbing alcohol is consistent with the physical evidence in this case. Also, Weston also told Stanley that he tried to make the fire appear electrical in origin. This is also consistent with the physical evidence because, as is discussed above, the fire started near the electrical panel inside the bathroom and near the electrical service cable.

Second, Weston was one of the few people who had access to a key for the camp. The evidence establishes that Hersom, her father, her son and Weston's wife, Roxanne (one of Hersom's sisters), had keys to the camp. The person who started the fire had access to the interior of the camp without the need to enter it forcibly, because, based on the best evidence, the camp was locked at the time of the fire, and there is no persuasive evidence that the perpetrator broke into the camp.[2] Thus, the universe of possible arsonists was very small, and Weston fell into that group. Weston denied any role in the fire but was unable to account for his whereabouts on the date of the fire.

Third, when Weston explained to Stanley that he wanted money, Stanley considered giving him money of her own in order to protect Hersom. Also, Stanley initially did not tell the state's investigator about Weston's confession because, she said, she wanted to protect her sister. As Hersom's counsel noted during closing arguments,

---

[2] Hersom herself testified that the camp was "secured," although it appears that she attempted to backtrack from this statement by indicating that she meant only that the camp was "safe." She also stated that the slider door, which faced the water, did not lock. However, this evidence is of questionable accuracy because of the very fact that she provided keys to several family members, who had Hersom's ongoing permission to use the premises. If someone could get into the building through an unlocked access, there would be no need for Hersom to provide keys to anyone.

the evidence does not disclose a reason why Stanley would now falsely implicate Hersom in the arson. If so, then there is no basis to ascribe any bias to Stanley. However, Stanley and Hersom were not on good terms. If Stanley wanted to get Hersom into trouble, Stanley had the opportunity to do so early in the investigation -- but she did not. Stanley's reluctance to implicate Hersom enhances the credibility of her testimony.

Finally, by all accounts, Buzzell and Stanley do not know each other and have never met. There has been no opportunity or occasion for the two to collaborate about their testimony. Accordingly, that each one of those witnesses implicated Hersom with testimony that coheres with the larger body of evidence presented in this case provides powerful corroboration for the other's testimony.

From this evidence, the court concludes that Hersom's claim against the Liberty insurance policy was based on a loss arising from an "act committed. . .by or at the direction of. . .[Hersom]. . .and. . .with the intent to cause a loss." Accordingly, the loss falls into this policy exclusion and is not covered by the Liberty policy. Liberty therefore is not obligated to pay Hersom pursuant to that policy.

Liberty seeks an award of its attorney's fees and costs pursuant to 24-A M.R.S. § 2186. Under that statute, a court may award fees and costs to the insurer when "it is proven that a person committed a fraudulent insurance act. . . ." Among other things, a "fraudulent insurance act" includes

> knowingly and with intent to defraud. . .[p]resenting or causing to be presented, or preparing any information containing false representations as to a material fact with knowledge or belief that the information will be presented by or on behalf of an insured, claimant or application to an insurer. . .concerning. . .[a] claim for payment or benefit pursuant to an insurance policy. . . .

24 M.R.S. § 2186(1)(A). The court assumes, without deciding, that the standard of proof applicable to this claim is the same one that is associated generally with fraud-based claims for relief, namely, a requirement that the claim be established by clear and convincing evidence. *See, e.g., Petit v. Key Bank of Maine*, 688 A.2d 427, 431 (Me. 1996). Here, the evidence of fraud reaches that standard. The evidence discussed above establishes a high probability that Hersom's claim for insurance proceeds was fraudulent because the fire was the result of her direction, because she intended to cause the loss, and because she acted with the intent to defraud Liberty. Accordingly, the court

6

concludes that Liberty is entitled to an award of reasonable attorney's fees and costs. Defense counsel may submit an affidavit of attorney's fees and costs within 14 days of the date of this order. Hersom may submit a response to that affidavit within 10 days of the filing, and Liberty shall have 7 days from Hersom's filing to submit a reply. This judgment shall not become final until the claim for attorney's fees and costs is adjudicated.

The entry shall be:

Judgment is entered for the defendant. The defendant shall be entitled to recover its reasonable attorney's fees and costs. Determination of attorney's fees and costs shall be made on the basis of additional filings from the parties. The judgment shall not become final until the claim for attorney's fees and costs is adjudicated.

Dated: January 4, 2008

_____
Justice, Maine Superior Court

NORMA HERSOM VS LIBERTY MUTUAL GROUP
UTN:AOCSsr  -2005-0004186                    CASE #:BANSC-CV-2005-00009
-----------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE      DATE
01 0000003163 ATTORNEY:BROGAN, JONATHAN
F
      F FOR:LIBERTY MUTUAL GROUP               DEF         RTND  03/05/2007

02 0000002972 ATTORNEY:JORDAN, ANNE
ADDR:415 CONGRESS ST PO BOX 4600 PORTLAND ME 04112
      F FOR:LIBERTY MUTUAL GROUP               DEF         RTND  02/17/2005
                                                          W/DRWN 03/05/2007

03 0000008541 ATTORNEY:BROWN, DONALD F

      F FOR:NORMA HERSOM                        PL         RTND  01/10/2005


          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.