**Donald E. BARNES and
Bernard J. O'Neill**

v.

**Joseph ZAPPIA et al.**

Supreme Judicial Court of Maine.

Argued Feb. 28, 1995.

Decided May 26, 1995.

John S. Campbell (orally), Poulos & Campbell, P.A., Portland, for plaintiffs.

Jeffrey A. Thaler (orally), Berman & Simmons, P.A., Lewiston, Christian T. Chandler (orally), Curtis Thaxter Stevens Broder & Micoleau, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

WATHEN, Chief Justice.

Plaintiffs Donald Barnes and Bernard O'Neill appeal from an order entered in the Superior Court (Cumberland County, *Fritzsche, J.*) granting a summary judgment on their claims of fraud, aiding and abetting fraud, interference with advantageous relationship, aiding and abetting interference with advantageous relationship, and intentional infliction of emotional distress in favor of defendants Charles E. Miller, Esq., John L. Carpenter, Esq., the law firm, Bernstein, Shur, Sawyer & Nelson, and Joseph Zappia. Plaintiffs contend that a summary judgment was precluded by the existence of genuine issues of material fact as to each of these claims. We disagree and affirm the judgment.

The record, as developed for the purpose of defendants' summary judgment motion, reveals the following facts: In the early 1970s Joseph Zappia and Donald Barnes formed United Fish Corporation. Zappia and Barnes had an unwritten understanding that, should Zappia decide to sell his stock, he would attempt to sell it to Barnes before selling it to another buyer. In 1978 Thomas McGough was hired as a full-time employee and in the early 1980s Barnes and Zappia agreed to sell McGough ten shares (about 7%) of United Fish stock. Barnes, Zappia and Thomas McGough entered into a stock redemption agreement which, among other things, limited the right to sell their stock to anyone except another shareholder.

Barnes worked to develop a market for wholesale fish in Philadelphia where he associated himself with Bernard O'Neill. In 1984 Thomas McGough and his brother James McGough asked Charles Miller, Esq., and his firm Bernstein, Shur (Lawyer Defendants) to prepare an offer to purchase the stock of United Fish from Zappia and Barnes. The offer was made, but Barnes refused to sell. Subsequently, Barnes and O'Neill privately agreed that Barnes would acquire Zappia's stock and then Barnes and O'Neill would enter into a five year contract to share the profits of United Fish.

By the spring of 1985, Zappia wanted to get out of the business because he had become concerned that the company's high volume of business in Philadelphia was placing United Fish at risk. On at least two occasions Zappia had told Barnes that he wanted to sell his shares in United Fish. Barnes said that, although he wanted to buy the shares, he was unable to do so, because he had pending legal problems and didn't have the money.

In April 1985, Thomas McGough approached Zappia concerning the purchase of his shares in United Fish. The McGoughs asked the Lawyer Defendants to represent them in the stock purchase. After negotiating price and other terms, Zappia agreed to sell his shares to Thomas and James McGough, without providing Barnes with any further opportunity to first buy the stock. The Lawyer Defendants prepared documents to form T.J, Inc., a corporation owned equally by Thomas and James McGough. James McGough applied to Key Bank for a loan to enable T.J., Inc. to purchase Zappia's stock. Key Bank denied the request to finance be-

cause it believed that if the transaction were completed the McGoughs would attempt to discharge Barnes who, as a minority stockholder, would probably create problems for the McGoughs. Key Bank advised James McGough that it would consider making a loan only if an amicable agreement could be made with Barnes that would eliminate the possibility of Barnes taking an adversary position.

The Lawyer Defendants drafted two separate contracts for the purchase of stock from Zappia and Barnes. Both contracts listed Thomas McGough as purchaser and provided that the buyer was free to assign his rights "to any other person or entity prior to the closing without the written consent of the Seller." Both contracts contained irrevocable 30 day proxies in favor of James McGough. On May 31, 1985, Zappia executed a purchase and sale agreement and a two year employment contract. The irrevocable proxy was amended to make it revocable within 30 days if the buyer decided not to close or the seller believed the buyer would not close. Barnes had not been informed of Zappia's negotiations with the McGoughs.

On May 31, 1985 Thomas McGough informed Barnes that he had bought Zappia's stock. Barnes was not told that the Key Bank financing for the purchase was contingent on an "amicable agreement" with him, and Zappia told Barnes that the sale was a "done deal." On June 3, at Barnes's request, Zappia met with Barnes and Peter Sang, Esq., corporate clerk of United Fish. Sang, with Zappia's consent, agreed to advise Barnes regarding the legality of the sale to Thomas McGough. Based on Zappia's representations, Barnes and Sang believed that the McGoughs had gained control of the corporation. A notice of a special shareholders' meeting on Tuesday, June 4, 1985, for the purpose of ratifying the sale, had already been delivered to Sang. Sang advised Barnes that the stock redemption agreement did not prohibit either Zappia's sale of the stock to Thomas McGough or Zappia's transfer of his proxy to James McGough. At this meeting, Barnes made a tentative decision to sell, and he and Sang met later that same day with the Lawyer Defendants to negotiate and sign a purchase and sale agreement.

At that meeting, Lawyer Defendants Miller and Carpenter provided Barnes with drafts of a purchase and sale agreement, and a one year employment contract. The agreement contained a 30 day irrevocable proxy that did not include the amendment that had been included in Zappia's proxy. The Lawyer Defendants did not have a copy of Zappia's contracts with them at the meeting and did not point out any differences between Barnes's and Zappia's proxies. At the request of Barnes and Sang, the proxy agreement was deleted and Barnes signed the documents.

Barnes, his attorney Sang, the Lawyer Defendants, the McGoughs, Zappia, and his lawyer Robert Stevens attended the shareholders' meeting on June 4 in the offices of Bernstein and Shur. Both Barnes's and Zappia's purchase and sale agreements were ratified. Sang asked Zappia's attorney, Stevens, for a copy of Zappia's contracts and Stevens said it was not necessary to have a copy since the provisions were identical to those in Barnes's contract. Miller overheard this exchange and either nodded his head or said something affirmative. As a result, Sang did not see Zappia's contracts.

On June 27, 1985, separate closings were held with Zappia and Barnes. At the first closing, Zappia signed a non-disclosure agreement providing that he would not discuss his closing with Barnes until after Barnes closed with T.J., Inc. Barnes and the McGoughs closed their sale later that same day. At that closing, Barnes asked Miller whether anything had changed in regard to the terms of the contracts, and he took Miller's assurance that nothing had changed to mean that his terms were identical to Zappia's.

On July 29, 1985, Barnes was fired from United Fish because, according to the McGoughs, internal investigations indicated that he had misappropriated approximately $500,000 from United Fish. United Fish brought suit against Barnes, O'Neill and others for $500,000.00, alleging a violation of the RICO Act. On August 2, 1986, after a six day bench trial, the United States District

Court concluded that there was no proof of any misappropriation. *See United Fish v. Barnes,* 627 F.Supp. 732 (D.Me.1986)

Barnes then filed suit against United Fish in the Superior Court, subsequently amending the complaint to add O'Neill as a plaintiff, and the Lawyer Defendants and Zappia as defendants. In 1993, the Superior Court (Cumberland County, *Fritzsche, J.*), dismissed the complaints against the Lawyer Defendants for the failure to state a claim. On appeal, we held that plaintiffs had stated a cause of action against the Lawyer Defendants for fraud, aiding and abetting fraud, interference with advantageous relationship, aiding and abetting interference with advantageous relationship, and intentional infliction of emotional distress. *Barnes v. McGough,* 623 A.2d 144 (Me.1993). On remand, the Superior Court entered a summary judgment in favor of defendant Zappia and the Lawyer Defendants. Plaintiffs now appeal that summary judgment.

When reviewing an appeal of the grant of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted to determine if the trial court committed an error of law. *H.E.P. Development Group, Inc. v. Nelson,* 606 A.2d 774, 775 (Me.1992). Summary judgment in the defendant's favor is proper when the plaintiff has the burden of proof on an essential element at trial and it is clear that the defendant would have been entitled to a judgment as a matter of law at trial if the plaintiff presented no more evidence than was before the court at the hearing on the motion for a summary judgment. *Id.* at 775. Pursuant to Maine law, to avoid a judgment as a matter of law at a trial, a plaintiff must establish a *prima facie* case for each element of his cause of action. *Butler v. Poulin,* 500 A.2d 257, 260 (Me.1985). A judgment as a matter of law in a defendant's favor is appropriate when any jury verdict for the plaintiff would be based on pure conjecture or speculation. *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992). To withstand the motion for a summary judgment on the fraud claims, plaintiffs must demonstrate specific facts that create a dispute as to whether defendants made a mis-

representation of material fact, with knowledge of its falsity or in reckless disregard of whether it was true or false and as to whether they reasonably relied on the misrepresentations to their detriment. *Letellier v. Small,* 400 A.2d 371, 376 (Me.1979); *Jourdain v. Dineen,* 527 A.2d 1304, 1307 (Me. 1987). Plaintiffs must produce evidence that demonstrates that the existence of each element of fraud is "highly probable" rather than merely likely. *Taylor v. Commissioner,* 481 A.2d 139, 153 (Me.1984).

Plaintiffs argue that a summary judgment was improperly granted because, based on the evidence presented, a jury could reasonably have found that Joseph Zappia and the Lawyer Defendants, acting with the McGoughs, made a series of misrepresentations intended to convey the false impression that the McGoughs had acquired control of the corporation, and Barnes had become a minority stockholder. They contend that this scheme was intended to pressure Barnes into selling his shares in United Fish to the McGoughs, and that, in fact, it succeeded.

Specifically, plaintiffs contend that by failing to disclose the conditional nature of the financing provided by Key Bank, defendants deceived Barnes into thinking that Thomas McGough had the means to purchase, and had in fact purchased, Zappia's stock. Barnes asserts that, had he known of the condition, he would have refused to sell and the McGoughs' agreement with Zappia would have failed for lack of financing.

In essence, plaintiffs argue that defendants had a duty to disclose the terms of the financing arranged with Key Bank. The financing arrangements, however, did not bear directly on the terms of the sales contract. In the absence of an affirmative misrepresentation of a material fact, or a confidential or fiduciary relationship between the parties, it was not actionable fraud in these circumstances for defendants to remain silent regarding financing arrangements. *See Eaton v. Sontag,* 387 A.2d 33, 38 (Me.1978).

Plaintiffs next argue that defendants' failure to amend the proxy agreement offered to Barnes was a material misrepresentation. Barnes asserts that had he known

that Zappia's proxy was revocable, he would have been alerted to the fact that the McGoughs' financing was uncertain. Under those circumstances, he would have refused to sell. This claim, however, makes sense only with the benefit of hindsight. Likewise, plaintiffs' assertion that Zappia's sale was not intended to be final, is conjecture and is insufficient to establish that Zappia made a material misrepresentation by stating that the sale was a "done deal." The purchase and sale agreement between Zappia and the McGoughs contained no clause making it contingent on financing. Plaintiffs also contend that the Lawyer Defendants misrepresented that the agreement offered to Barnes was the same as the agreement Zappia had signed. The agreements, however, are in fact substantially the same. Having failed to demonstrate a material misrepresentation or an actionable failure to disclose, plaintiffs have failed to establish a *prima facie* case for fraud and the Superior Court summary judgment was properly granted.

██ Plaintiffs also contend that summary judgment was improperly granted on their claims of interference with an advantageous relationship and intentional infliction of emotional distress. Interference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference. *MacKerron v. Madura*, 445 A.2d 680, 683 (Me.1982). We have found *no fraud* and the record discloses no credible evidence of intimidation.

██ In order to recover for his claims of intentional infliction of emotional distress, plaintiff Barnes must establish that defendants intentionally or recklessly inflicted severe emotional distress, that their conduct was so extreme and outrageous as to exceed "all possible bounds of decency" such as would be regarded as "atrocious and utterly intolerable in a civilized community," that defendants actions caused his emotional distress and that the distress is so severe that "no reasonable man could be expected to endure it." *See Vicnire v. Ford Motor Credit Corp.*, 401 A.2d 148, 154 (Me.1979). The

record generates no genuine issue that defendants' conduct meets this high standard. Summary judgment was properly granted on these claims and we find no merit in plaintiffs' remaining assertions.

The entry is:

Judgment affirmed.

All concurring.