STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION DOCKET NO.
CV-01-34
AMK - PEN - 4/3/2002

ROBIN DAVIS,
    Plaintiff

v.

SUSAN GROVER, et al.
    Defendants

DECISION AND ORDER

FILED AND ENTERED
SUPERIOR COURT

APR 0 3 2002

PENOBSCOT COUNTY

This matter is before the court on the defendants' motion for summary judgment and the plaintiff's motion for leave to amend complaint. For the following reasons, the plaintiff's motion is denied and the defendants' motion is allowed in part and denied in part.

## BACKGROUND

Peter Davis ("Peter"), the defendants' father and plaintiff's husband, owned a house (the "house"), which was moved to a lot in Veazie in 1988. Defendant Susan Grover ("Grover") owns the lot on which the house is now located; she also owns the neighboring lot, upon which her house sits. A line of trees divides the two lots. Peter and the plaintiff, Robin Davis ("Davis"), cohabitated in the house, both before and after the 1988 move, for a period totalling approximately twenty-five years. After the house was moved in 1988, and during the time Peter and Davis lived in it together, certain improvements were made to the premises, including building a foundation for the house, adding utilities, performing some remodeling and landscaping, and erecting a kennel. Davis asserts that she "expended her own funds to pay for these repairs and improvements."

For many years, Peter had a number of health problems. Beginning in 1997, Peter became ill and was unable to care for himself. He then had a stroke in 1998 and had to be hospitalized. Upon his return home from the hospital, Peter had difficulty walking, so Davis arranged home health care and physical therapy. Peter made a lot of progress, but was still very weak in his legs.

At some point, Peter was taken out of the house; the parties dispute how and why he was taken. According to the defendants, in June of 1999, the Maine Department of Human Services began an investigation of Peter's living situation. As a result of that investigation, in July of 1999 defendant Patricia Bastey ("Bastey") initiated proceedings

to take guardianship over Peter. On August 12, 1999, the Probate Court named Bastey as Peter's temporary guardian. Subsequently, on October 19, 1999, the Probate Court appointed Bastey as Peter's guardian.

According to Davis, however, around July of 1999, "it became clear . . . that Peter needed more rehabilitation than he was getting at home. [Davis] and Peter [] discussed the matter, and they agreed that Peter would go to the hospital and then to the Maine Veteran's Home. [Davis] denies that Peter was 'removed' from the house, and in fact, [] Davis took Peter to the hospital herself."

During the time Bastey was guardian, she refused to tell Davis where Peter was, and when Davis found out and began visiting him, Bastey took steps to prevent her from seeing Peter. The defendants contend that "Bastey took such action after consultation with and at the direction of [Peter's] caregivers, who, along with Defendants, were concerned that [Davis's] behavior towards [Peter] was detrimental to his well-being, and only after the staff's attempts to supervise Davis's visits failed." Meanwhile, Peter was told that Davis had run off with another man and that Davis had abandoned him.

While acting as Peter's guardian, Bastey expended moneys for his health and welfare, and accounted for all such sums. According to Davis, she was dependent upon Peter both for housing and income, and that while Bastey expended sums for Peter, she did nothing to support Davis, even though Bastey "had income and opportunity." The defendants assert that Davis was, and remains, capable of employment. Moreover, the defendants deny that Bastey was under any obligation or duty to provide any support or assistance to Davis from Peter's estate and income, that Davis was entitled to the money paid by Bastey to the Maine Veteran's Home, or that Bastey was under any obligation or duty to provide such funds to Davis.

On August 5, 1999, Peter transferred the house to Grover by a "Deed of Building," which conveyed "all buildings, structures, improvements and fixtures now erected upon the land of Susan Grover . . . being the ranch house and attached garage together with all fences and appurtenances of Peter H. Davis." Davis admits that Peter executed a "Deed of Building" but denies that it was a valid transfer, stating that at the time Peter executed the deed, Bastey had already filed a petition for guardianship of

2

Peter. Included in the petition was a doctor's statement from Henry Atkins, M.D., Peter's physician, stating that Peter lacked capacity to make decisions. Davis further states that "[d]uring the time leading up to the . . . Deed . . . [Davis] was hospitalized and not in contact with Peter." Peter was represented by counsel in that transaction.

After Grover received title to the house, she served a Notice of Termination of Tenancy on Davis which stated:

> You are hereby notified, pursuant to 14 M.R.S.A. § 6002, that your tenancy-at-will in the premises you occupy at 1113 Chase Road, Veazie, Maine owned by Susan Grover will terminate after the expiration of 30 days following the date of this notice is served on you.
>
> This notice is given to you by Susan Grover, owner of the premises. You must vacate the premises on or before the termination date, or you will be subject to an action for forcible entry and detainer.

After Davis failed to heed the Termination of Tenancy, Grover brought an action for forcible entry and detainer against Davis for possession of the house. The complaint for forcible entry and detainer stated, in part:

> 3. The defendant, Robin Davis is a tenant-at-will in certain premises located at 1113 Chase Road in Veazie, Maine, which premises are owned by the plaintiff, Susan Grover.
> 4. By a Notice of Termation served on August 9, 1999, the defendant, Robin Davis, was given notice that her tenancy was terminated effective 30 days after service of that notice . . . .
> 5. The defendant, Robin Davis, has not vacated the premises since service of the Notice of Termination.

In her answer, Davis generally denied that she was a tenant at will at 1113 Chase Road and that Grover owned those premises. Davis did not assert title ownership in the house, and did not argue that the transfer of title to Grover was invalid by reason of Peter being incompetent.

After a hearing on October 12, 1999, the court issued a decision, in which it found that Grover was the title owner of the house, that Davis was a tenant at will, and that Davis made "no claim of title of the lot in either herself or Peter." On December 13, 1999, the court (Russell, J.) entered final judgment in the forcible entry and detainer action in favor of Grover. On December 20, 1999, Davis appealed the final judgment to the Superior Court, but in a decision dated July 11, 2000, the court (Hjelm, J.) denied the

3

appeal.[1]

Grover's success in the forcible entry and detainer action forced Davis to vacate the premises. Davis lived in the house from the time it was moved onto Grover's property until Grover evicted her. Davis asserts that after Grover evicted her from her home and Bastey cut her off from Peter's support, she was without means of support and became homeless.

Peter died on March 31, 2001. Davis claims that she was devisee under Peter's last will and testament and that she would have taken any property owned by Peter at his death. She also claims that Peter gave her a durable power of attorney on January 7, 1999, which she could have used to manage Peter's care and affairs if given the chance.

By a complaint dated February 13, 2001, Davis brought this action asking for a judgment declaring that the deed is void due to Peter's incompetence and that Davis retains rights as a tenant and/or spouse to live therein, and that the transfer violated the Improvident Transfers of Title Statute (Count I); asking for a partition of the property, by statute and in equity (Count II); alleging negligent and/or intentional infliction of emotional distress through wrongful eviction and abuse of process (Count III); asking for a judgment declaring that Davis's power of attorney remains valid and may be exercised by her for her costs (Count IV); alleging intentional and/or negligent infliction of severe emotional distress and loss of comfort and society of her husband by physically keeping them apart (Count V); and alleging Bastey's misapplication of Peter's funds and income, and failure and refusal to expend Peter's funds to support Davis, despite the legal obligation of a spouse to support his spouse, and the fact that a portion of Peter's income is specifically paid for the support of Davis (Count VI).

On January 4, 2002, the defendants moved for summary judgment on all counts of Davis's complaint. After filing her opposition to the motion for summary judgment, Davis filed a motion for leave to amend her complaint to add a seventh count alleging

---

1. The only argument on which Davis seems to have based her appeal to the Superior Court is "that the trial court erred in rejecting her claim that she was the third party beneficiary of a 1998 agreement between [Grover] and Peter . . . ." Although the District Court noted that she failed to raise the issue of Peter's competency to transfer the house, she did not address that issue until she brought this action. She failed to assert that the general denial in her answer was a challenge to the legality of the transfer.

tortious interference with an expected inheritance.

DISCUSSION

**I. Plaintiff's Motion for Leave to Amend Complaint**

Davis has moved to amend her complaint to add a seventh count alleging tortious interference with an expected inheritance. A plaintiff "may amend [his complaint] only by leave of court," and "leave shall be freely given when justice so requires." M.R. Civ. P. 15 (a). Whether to allow a pleading amendment rests with the court's sound discretion. In re Sen, 1999 ME 83, ¶ 10, 730 A.2d 680, 683. The Rule 15 (a) standard "is a relatively low standard, but it becomes compounded with a higher standard once the deadline to amend passes because a scheduling order shall not be modified upon a showing of good cause." El-Hajj v. Fortis Benefits Ins. Co., 156 F.Supp.2d 27, 34 (D.Me. 2001) (quotation and citation omitted).

The court issued its scheduling order on February 16, 2001, in which it ordered: "Unless otherwise ordered by the court . . . motions to amend the pleadings may not be filed later than 4 months from the date of this order." Four months from February 16, 2001 was June 16, 2001. Davis did not file her motion to amend until almost eight months past this deadline. Her proposed cause of action, tortious interference with inheritance, accrued, at the very latest, on March 31, 2001 -- approximately two and one-half months before the deadline to amend her complaint. When a party moves to amend the pleadings so late in the game, the court cannot allow the motion except "for good cause shown." M.R. Civ. P. 16 (a). Because Davis has not shown good cause, her motion is denied.

**II. Defendants' Motion for Summary Judgment**

    **A. Summary Judgment Standard**

A party is entitled to summary judgment when there are no genuine issues of material fact, and that party "is entitled to judgment as a matter of law." M.R. Civ. P. 56 (c); In Re Estate of Davis, 2001 ME 106, ¶ 7, 775 A.2d 1127, 1129. "A fact is material when it has the potential to affect the outcome of the suit." Kenny v. Dep't of Human Services, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (citation omitted). "An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of truth at trial." Id. (citation omitted).

5

"To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law." Kenny, 1999 ME 158, ¶ 3 (citation omitted). "[T]o avoid a judgment as a matter of law at a trial, a plaintiff must establish a *prima facie* case for each element of his cause of action." Barnes v. Zappia, 658 A.2d 1086, 1089 (Me. 1995). In other words, the plaintiff must produce evidence that demonstrates that the existence of each element is "highly probable rather than merely likely." Id.

## B. Count I

In Count I, Davis alleges that the transfer from Peter to Grover is void because of Peter's incompetence, and that the transfer violated the Improvident Transfers of Title Statute. The defendants argue that Davis is barred from asserting this claim, under the doctrine of res judicata, and that Davis has no standing to bring a claim under the Improvident Transfers of Title Statute.

### 1. Res Judicata

The doctrine of res judicata is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once. Camps Newfound/Owatonna v. Harrison, 1998 ME 20, ¶ 11, 705 A.2d 1109, 1113. It is comprised of two types: "issue preclusion" and "claim preclusion." Collateral estoppel, or "issue preclusion," prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case, id., "if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." Cline v. Maine Coast Nordic, 1999 ME 72, ¶ 9, 728 A.2d 686, 688 (quotation and citation omitted).

The defendants argue that Davis is collaterally estopped from bringing this action because the District Court resolved the issue of ownership of title in the forcible entry and detainer action. To the contrary, the issue Davis raises in this case, that of Peter's competence to transfer title to his daughter, was not determined by a prior final judgment. The court could not address the issue at bar during the forcible entry and detainer action because Davis did not raise it. See Colonial Builders and Investors, Inc. v. Meier, 417 A.2d 422, 424 (Me. 1980). The doctrine of issue preclusion, therefore, does

not apply here.

The doctrine of "claim preclusion", on the other hand, prohibits relitigation of an entire cause of action. Camps Newfound/Owatonna, 1998 ME 20, ¶ 11, 705 A.2d at 1113. Claim preclusion bars the relitigation of a claim if: (1) the same parties are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action. Id.

In this case, the parties involved in the forcible entry and detainer action are involved in this action as well, thereby meeting the first requirement. Secondly, a valid final judgment was entered in the prior action. After a hearing, Judge Russell issued a decision and rendered a final judgment, which the Superior Court upheld.

Finally, the matter presented for decision in this action was, or could have been litigated in the first action. In a forcible entry and detainer action, "[i]f the defendant claims title in defendant's name or in another person under whom the defendant claims the premises, [he or she] *shall* assert such claim by answer filed on or before the return day . . . ." M.R. Civ. P. 80D (c). Although Davis seems to admit that issues of title can, and should be, raised as part of the forcible entry and detainer action, she asserts that her claim is of *equitable* title, not record title, and that equitable title is beyond the scope of the forcible entry and detainer process. The court does not agree.

"If the defendant in [a forcible entry and detainer] action answers the plaintiff's complaint by claiming title in himself . . . the action is removed to the Superior Court." Doughty v. Sulllivan, 661 A.2d 1112, 1121 n.10 (Me. 1995). When there is conflict of titles in a forcible entry and detainer action, "the issue of conflicting titles is only triable in the Superior Court . . . ." Colonial Builders, 417 A.2d at 424. Davis has not cited any law demonstrating a difference between record and equitable title that would make one suitable to raise in a forcible entry and detainer action, and the other not. See Harrington v. Harrington, 269 A.2d 310 (Me. 1970)(court made no note of error in defendant's pleading of equitable title in herself in a forcible entry and detainer action). Whether Davis's dispute was over record or equitable title, she should have raised the issue during the forcible entry and detainer process, as the action would have then been removed to, and addressed in, the Superior Court. The defendants' motion for

7

summary judgment is, therefore, allowed on this issue.

## 2. Improvident Transfers of Title Statute

The "Improvident Transfers of Title" Statute, 33 M.R.S.A. §§ 1021 to 1025, provides that:

> [i]n any transfer of real estate . . . for less than full consideration by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it shall be presumed that the transfer was the result of undue influence, unless the elderly dependent person was represented in the transfer by independent counsel.

33 M.R.S.A. § 1022 (1). "When the elderly dependent person successfully raises the presumption of undue influence by a preponderance of the evidence and when the transferee fails to rebut the presumption, *the elderly dependent person* shall be entitled to avoid the transfer and be entitled to the relief set forth in section 1024." Id. (Emphasis added). Further, "[a] civil action may be brought to obtain relief under this chapter by *an elderly dependent person or that person's legal representative.*" 33 M.R.S.A. § 1023 (1) (emphasis added). A "legal representative" means legal representatives of living individuals, rather than personal representatives of their estates. Sylvester v. Benjamin, 2001 ME 48, ¶ 14, 767 A.2d 297, 301.

The language of the statute itself prohibits Davis from bringing an action alleging that the defendants violated its terms. Davis is neither the "elderly dependent person" protected by the statute, nor "that person's legal representative." Thus, Davis lacks standing to assert this claim. The defendants' motion for summary judgment is allowed on this issue, and Count I is dismissed in its entirety.

## C. Count II

In Count II, Davis asks the court for a partition of the property based on the betterments she provided. The defendants argue that Davis cannot establish the statutory requirements entitling her to recover, and as such the court should dismiss Count II. The statute upon which Davis relies, 14 M.R.S.A. § 6956, provides:

> When the demanded premises have been in the actual possession of the defendant or of those under whom he claims for 6 successive years or more before commencement of the action, such defendant shall be allowed a compensation for the value of any buildings and improvements on the premises made by him or by those under him whom he claims, to be ascertained and adjusted as provided.

8

A "claim by possession and improvement" occurs when a party establishes a claim for betterments pursuant to statute or by adverse possession. Frost Vacationland Properties, Inc. v. Palmer, 1999 ME 15, ¶ 13, 723 A.2d 418, 422. "To entitle a tenant to compensation for improvements pursuant to section 6956, [the tenant's] possession must be open, notorious, exclusive and adverse so that if prolonged for twenty years it would give him fee to the land." State v. Kelly, 606 A.2d 786, 788 (Me. 1992).

The parties dispute whether Davis's possession of the house was "notorious" and "adverse." The purpose of the "open" and "notorious" requirements is to provide the true owner with adequate notice that a trespass is occurring, and that the owner's property rights are in jeopardy. Striefel v. Charles-Keyt-Leaman, 1999 ME 111, ¶ 11, 733 A.2d 984, 991 (discussing adverse possession). Hence, a claimant will fail to satisfy the requirements of openness, visibility, and notoriety unless the possession and use were sufficiently apparent to put the true owner on notice that the claimant was making an adverse claim of ownership." Id.

Davis does not have a claim against Grover under section 6956 because she did not live in the house, while *Grover* had title to the house, for six years. Peter owned the house for most of the time in which she lived in it. Her occupancy of the house was neither notorious nor adverse to Peter's interests, because she was there with his permission. Only when Grover received title did Davis's occupancy become notorious and adverse to *Grover's* interests. The court grants the defendants' motion for summary judgment on Count II.[2]

---

2. Davis asserts that she also has a claim under 14 M.R.S.A. § 6957, which provides:

When a person makes entry into lands or tenements of which the tenant in possession, or those under whom he claims, have been in actual possession for 6 years or more, and withholds from such tenant the possession thereof, the tenant may recover of the person so entering . . . the increased value of the premises by reason of the buildings and improvements made by the tenant or by those under whom he claims, to be ascertained by the principles hereinbefore provided.

Both sections 6956 and 6957 are analogous in that they apply only to disseizors of the owner of the premises. "Six years adverse possession appears to be necessary to give the tenant a right to [] a [betterments] claim." Davis v. Dudley, 70 Me. 236, 240 (1879). Again, Davis lacks the requisite six years of open and notorious possession necessary to support her betterments claim. Hence, similar to her claim under section 6956, Davis's claim under section 6957 must be dismissed.

9

### D. Counts III and V

In Count III, Davis claims that the defendants negligently and/or intentionally inflicted emotional distress by wrongfully evicting her from the house. The fact that the defendants obtained a court judgment is *prima facie* evidence of the "non-wrongfulness" of the defendants' actions. Because Davis offers nothing to the contrary, the court awards summary judgment in favor of the defendants on Count III.

In Count V, Davis alleges that the defendants intentionally and/or negligently inflicted severe emotional distress by physically keeping her from her husband.

#### 1. Intentional Infliction of Emotional Distress

To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23. Davis has presented enough evidence to submit this claim to a fact finder.

First, Davis has presented sufficient evidence to support the first element, that is, that the defendants acted with enough certainty that it would cause Davis distress. It is entirely possible that the defendants wanted, or could foresee, that their act of denying Davis access to her husband would harm Davis. Davis had been married to Peter for a number of years, and would certainly have wanted to visit him while he was ill and an invalid. In addition, as Judge Russell noted, the relationship between the plaintiff and the defendants was "strained." Second, there is a question as to whether the defendants' conduct was "extreme and outrageous." Although the defendants assert their actions were based on advice from a medical professional, the fact that Davis couldn't see Peter and was informed that the defendants fabricated reasons as to why she was not coming in to visit could be seen by a factfinder as "extreme and

outrageous."

Finally, there is the issue of whether Davis has shown that the defendants' acts caused Davis severe emotional distress. "Serious emotional distress[3] exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." Holland v. Sebunya, 2000 ME 160, ¶ 18, 759 A.2d 205, 212. Although Davis has not asserted any specific emotional distress, "[i]n appropriate cases, 'severe' emotional distress may be inferred from the 'extreme and outrageous' nature of the defendant's conduct alone." Latremore v. Latremore, 584 A.2d 626, 633 (Me. 1990), quoting Vicnire v. Ford Motor Credit Co., 401 A.2d 148, 154 (Me. 1979). See RESTATEMENT (SECOND) OF TORTS § 46 cmt. K (1965). It is for the court to determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." Champagne v. Mid-Maine Medical Center, 1998 ME 87, ¶ 15, 711 A.2d 842, 847. This court finds that the defendants' conduct may reasonably be regarded as sufficiently extreme and outrageous such that emotional harm may be inferred by a fact finder. The defendants' motion for summary judgment is, therefore, denied on this issue.

## 2. Negligent Infliction of Emotional Distress

To set forth a negligent infliction of emotional distress claim, a plaintiff must show (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. Curtis, 2001 ME 158, ¶ 18, 784 A.2d at 25. Davis has submitted enough evidence to overcome the defendants' motion on this count.

First, "[w]hether a plaintiff is owed a duty of care is a matter of law." Stanton v. University of Maine System, 2001 ME 96, ¶ 8, 773 A.2d 1045, 1049. Plaintiffs claiming negligent infliction face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability. Curtis, 2001 ME 158, ¶ 18, 784 A.2d at 25. There is a duty to act reasonably to avoid emotional harm in circumstances in which a special relationship exists between the actor and the person emotionally harmed. Id. at ¶ 19.

---

3. The Law Court uses the terms "severe" and "serious" interchangeably. See Town of Stonington v. Galilean Gospel, 1999 ME 2, ¶ 11 n.2, 722 A.2d 1269, 1272 n.2.

11

In this case, there is enough evidence in the record demonstrating that there was a special relationship between the actors, the defendants, and the person emotionally harmed, the plaintiff. The plaintiff's marriage to the defendants' father imposed upon the defendants a duty not to cause emotional harm to the plaintiff in Peter's final years in ill health.

Second, there is at the very least a question of fact as to whether the defendants breached that duty by denying Davis access to Peter and misrepresenting the truth about Davis to Peter. Furthermore, as discussed above, there is enough in the record showing that a fact finder may infer from the nature of the defendants' actions that Davis suffered emotional harm. The defendants' motion is denied as to this issue, and to this count in its entirety.

### E. Count IV

In Count IV, Davis is asking for a judgment declaring that Davis's power of attorney remain valid. The defendants contend that this count is moot, as Peter died last March. The court agrees with the defendants.

Courts can only decide cases before them that involve justiciable controversies. Lewiston Daily Sun v. School Administrative Dist. No. 43, 1999 ME 143, ¶ 12, 738 A.2d 1239, 1242. "Justiciability requires a real and substantial controversy." Id. "If a case does not involve a justiciable controversy, it is moot." Id. Even if Davis were to win on this count, her power of attorney would not be valid, as Peter died last spring. This count is, therefore, moot, and the court allows the defendants' motion for summary judgment on Count IV.

### F. Count VI

In Count VI, Davis asserts that Bastey misapplied Peter's funds and failed to expend funds to support Davis. The defendants assert that the court should dismiss this count because it lacks subject matter jurisdiction.

"The [probate] court has exclusive jurisdiction over guardianship proceedings . . . ." 18-A M.R.S.A. § 5-102. "The court where the ward resides has concurrent jurisdiction with the court which appointed the guardian . . . over resignation, removal, accounting and other proceedings relating to the guardianship." 18-A M.R.S.A. § 5-313. Because the Probate Court has original jurisdiction over accountings in guardianship cases, the court

12

awards summary judgment in Count VI in favor of the defendants.

THE DOCKET ENTRY IS

> The plaintiff's motion for leave to amend complaint is denied. The defendants' motion for summary judgment is granted as to Counts I, II, III, IV, and VI. The defendants' motion for summary judgment is denied as to Count V.

The clerk is directed to incorporate this order into the docket by reference.

_____
Justice, Superior Court

**Dated: April 2, 2002**

Date Filed __2/13/2001__ ___PENOBSCOT___ Docket No. ___CV-2001-34___
County

Action __DECLARATORY JUDGMENT___
ASSIGNED TO JUSTICE FRANCIS C. MARSANO
**RE-ASSIGNED TO JUSTICE ANDREW M. MEAD**

ROBIN DAVIS  vs.  SUSAN GROVER and PATRICIA BASTEY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| CHARLES GILBERT, ESQ.<br>P O BOX 2339 - 82 Columbia Street<br>BANGOR ME 04402-2339 | RUDMAN & WINCHELL<br>P O BOX 1401 - 84 Harlow Street<br>BANGOR ME 04402-1401<br>BY: Curtis E. Kimball, Esq. |

| Date of Entry | |
|---|---|
| 2/13/01 | Complaint filed. |
| 2/13/01 | Officer's Return of Service as to Patricia Bastey filed (s.d. 1/16/01) |
| 2/13/01 | Officer's Return of Service as to Susan Grover filed (s.d. 1/16/01) |
| 2/13/01 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 2/16/01 | Scheduling Order (M.R. Civ.P. 16(a) filed. Discovery deadline is November 1, 2001. (Marsano, J.) Copy forwarded to Plaintiff's counsel. |
| 2/26/01 | Defendants Susan Grover and Patricia Bastey's Answer to Plaintiff's Complaint filed (Rec'd in Bangor District Court 1/31/01) |
| 10/4/01 | Pursuant to Administrative Order #JB-00-03, effective October 10, 2001, this case is re-assigned to Justice Mead. Copy forwarded to attorneys of record. |
| 11/26/01 | Letter received by Plaintiff's Counsel Charles E. Gilbert, III reporting estimate of 1 ½ **days** for trial. |
| 12/31/01 | Attorneys and pro se parties of record notified of Jury Waived Trial Term: March 4-6/2002; and April 1-3/2002 before Justice Andrew M. Mead. Copy of Jury Waived Trial Term list mailed this date. |
| 12/31/01 | Attorneys of record notified case set for Backup Jury Waived Trial to Jury Trial term: March 11-14; 18-20; 25-29, 2002 April 8-11; 22-24; 29-30, 2002; May 1-2, 2002 before Justice Andrew M. Mead. Copy of Jury and Jury Waived Trial list forwarded to attorneys of record. |
| 12/31/01 | Pretrial Order (M.R.Civ.P. 16(b) filed. The entry will be: Rule 16(b) Pretrial Order entered. (Mead, J.) Copy forwarded to attorneys of record. |