STATE OF MAINE
SOMERSET, ss.

REC'D & FILED
Wendy M. Robinson
DEC 04 2007
Clerk of Courts
Somerset County

SUPERIOR COURT
DOCKET NO. CV-04-56,
JMS - SOM - 12/4/2007

DEBORAH C. LEWIS,

Plaintiff    )
             )    ORDER ON MOTION
v.           )    FOR SUMMARY
             )    JUDGEMENT
GOOD WILL HOME       )         DONALD L. GARBRE___
ASSOCIATION, et al., )              LAW LIBRARY
             )
Defendant    )         JAN 15 2008

Pending before the court is the Defendants' motion for summary judgment filed

pursuant to M.R. Civ. P. 56. The court has reviewed the parties' filings on the matter and

concludes that the Defendants' motion for summary judgment is granted in part and

denied in part.

## BACKGROUND

The following facts are undisputed by the parties. On March 9, 2001, the

Plaintiff, Ms. Deborah Lewis, was hired by George Walter Associates (GWA) to be the

clinical coordinator for Redington House. Subsequently, Good Will-Hinckley (GWH)

acquired GWA, and all of GWA's employees, including Ms. Lewis, became employees

of GWH.[1] Ms. Lewis continued in her capacity as the clinical coordinator for Redington

House and, on August 21, 2002, signed a new agreement for employment covering the

period from September 1, 2002, until August 31, 2003.

On September 9, 2002, Tara Devine, Ms. Lewis' supervisor, gave Ms. Lewis a

verbal warning. The following day, Ms. Devine gave Ms. Lewis a written summary of

---

[1] The actual date on which GWA ceased to exists is unclear. Defendants' Statement of Material Facts ("DSMF") state that "in June of 2002, GWA ceased to exists." (DSMF ¶ 2.), but Defendants' then state in the Defendants' Response to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("DRPODSMJ") that "GWA ceased to exists at the end of the calendar year in 2003." (DRPODMSJ ¶ 16.)

1

the verbal warning. The written warning stated that Ms. Lewis' job was in jeopardy for the following reasons: habitual incompletion of paperwork, frequent lateness and rescheduling of meetings, lack of preparation for team meetings, inability to resolve conflicts with other staff, excessive absenteeism, and unprofessional dress. The written warning also stated that a follow-up would be conducted in 15 days, and if improvements were not made, Ms. Lewis would receive another written warning and be placed on probation for 30 days.

On September 24, 2002, a follow-up was conducted and Ms. Devine issued another written warning. The warning indicated that while Ms. Lewis had shown improvement in some areas, those improvements made were not sufficient. Ms. Lewis was placed on probation for 30 days. The written warning stated that if, after 30 days, a job performance review did not show adequate improvement, Ms. Lewis would have the option to resign or she would be terminated. Ms. Lewis submitted a letter of resignation on September 30, 2002, stating that her last day of would be October 15, 2002.

On September 9, 2004, the Ms. Lewis filed a complaint against GWH, Jeffrey Johnson, Director of Clinical and Residential services for GWH, Tara Devine, Clinical Director of GWH, and Ms. Callains supervisor, Lisa Demmons, Director of Staff Enhanced Programs for GWH, and Mary Rose Courtney (Callain)[2], Ms. Lewis' direct social work supervisor. The Plaintiff filed an amended complaint on December 8, 2004. A second amended complaint, filed on May 5, 2005, added GWA as a defendant. In her seven-count complaint, Ms. Lewis alleges, breach of contract (Count I), violation of 26 M.R.S.A. § 631 (Count II), defamation (Count III), intentional infliction of emotional

---

[2] Although Callian is now known as Mary Rose Courtney, she will be referred to as "Callian" because Callian was her last name at the time of these events.

2

distress (Count IV), interference with an advantageous contractual relationship (Count V), negligent infliction of emotional distress (Count VI), and punitive damages (Count VII). The Defendants deny liability for each count.

Defendants' filed their motion for summary judgment and statement of material facts on June 6, 2007, pursuant to Rule 56. In accordance with the Maine Rules of Civil Procedure, Plaintiff filed its memorandum in opposition to Defendants' motion and opposition to Defendants' statement of material facts on July 9, 2007. After reviewing the parties' motions, the court finds that genuine issues of material fact exist with regards to Counts I, II, III, V, and VII, and therefore, denies the Defendants' motion for summary judgment as to those counts. As to Counts IV and VI, the court grants Defendants' motion for summary judgment.

## STANDARD OF REVIEW

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *See e.g., Darlings v. Ford Motor Co.*, 2003 ME 21, ¶ 14, 817 A.2d 877, 879. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926. "A fact is material when it has the potential to affect the outcome of the suit." *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172. An issue is genuine "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044.

3

Essentially the Court determines whether there is a genuine issue of material fact by comparing the parties' statement of material facts and corresponding record references. *See e.g., Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8, 742 A.2d 933, 938. The court will view the evidence in light most favorable to the non-moving party. *See e.g., Steeves v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 1998 ME 210, ¶ 11, 718 A.2d 186.

## DISCUSSION

### A. Breach of Contract (Count I)

Ms. Lewis and GWH entered into an agreement for employment from June 10, 2002, through August 31, 2002. This written document was signed by Ms. Lewis and by the executive director of GWH and included Ms. Lewis' title, dates of employment, and her salary. A similar document was prepared and signed for the period of September 1, 2002, through August 31, 2003. The Defendants in their motion for summary judgment rely upon a number of Law Court cases wherein the Court held that an employee's handbook does not necessarily constitute an employment contract. Defendants are now trying to use the language in a handbook (Personnel Policies and Procedures) to establish there wasn't a contract. They refer to a section in the Policies and Procedures where it states that the termination of notice must be given in accordance with Sec. 3, Conditions of Employment of GWH's Personnel Policies and Procedures.

After reviewing the language in the Personnel Policies and Procedures and the documents Ms. Lewis claims to be her employment contracts, this court cannot find that as a matter of law the document in question does not constitute an employment contract. For this reason, the Defendants' motion for summary judgment on this issue is DENIED.

## B. Violation of 26 M.R.S.A. § 631 (Count II)

### *1. Personnel File and 26 M.R.S.A. § 631.*

Ms. Lewis alleges that when she requested a copy of her personal file in October 2002 pursuant to 26 M.R.S.A. § 631, the Defendants initially refused to provide her with copies of her 'clinical supervision logs.' (PSMF ¶ 272.) She states that the supervision logs documented the number of hours she had served as a clinician and the number of hours of supervision she received, and that she requested such documents so that the hours could be reported to the Social Worker Licensure Board (Second Amendment Complaint, ¶ 37). The Defendants acknowledge that the request was made, but claim to have denied the request for confidentiality reasons. (Amended Defenses and Answer ¶ 33).

The Plaintiff argues that such a refusal violated 26 M.R.S.A. § 631, and therefore, she is entitled to collect civil forfeiture and attorney fees. The Defendants' argue that the clinical supervision logs were not part of the Plaintiff's personnel file and therefore no violation of 26 M.R.S.A. § 631 occurred. Specifically, the Defendants assert that the documents Plaintiff requested were clinical in nature and did not address Ms. Lewis in terms of her employment. These logs were finally produced to Ms. Lewis in January 2005 through the discovery process.

The issue before the court is whether the 'clinical supervision logs' are documents that the legislature intended to include in an employee's 'personnel file' as defined in 26 M.R.S.A. § 631.[3] The Defendants assert that these logs are not part of the personnel file

---

[3] 26 M.R.S.A. § 631, Employee right to review personnel files states that "the employer shall, upon written request from an employee or former employee, provide the employee, former employee or duly authorized representative with an opportunity to review and copy the employee's personnel file...For the purposes of this section, a personnel files includes, but is not limited to, any formal or informal employee evaluations

5

because: 1). the notes were Ms. Callian's, the Plaintiff's supervisor, not the Plaintiffs; 2). the notes were not included in the personnel file; and 3). the logs were kept for licensing purposes, not to determine merit or salary. While Maine case law on this statute is not extensive, it is informative. In *Harding v. Walmart Stores, Inc.*, 2001 ME 13, 765 A.2d 73, the Law Court affirmed a lower courts decision that internal investigative reports relating to the termination of the plaintiff where part of the plaintiff's personnel file. In its decision, the Law Court evaluated the statutory definition of "personnel file" and found that that the "legislature did not limit documents included in personnel file to those records physically included within a particular file folder." *Id.* ¶ 11. The court also noted that the "legislature used broad category descriptors rather than an extensive list of specifically designated records to described the contents of a personnel file." *Id.* ¶ 12. The question for the court was therefore, whether the internal investigative reports, "regardless of where they were kept of what they were labeled, [fell] within the broad categories of documents enumerated in section 631." *Id.* ¶ 13. The court concluded that investigative reports relating to an alleged theft by an employee relate to the employee's character or work habits and are therefore part of the personnel file. *Id.*

Pursuant to the Law Courts decision in *Harding*, the court here finds the Defendants' argument that the documents were not physically part of the file or prepared by the Plaintiff not determinative as to whether the documents the Plaintiff requested were part of her personnel file. The purpose of the documents, however, is important, and is what requires further development. The Defendants assert that the particular

---

and reports relating to the employee's character, credit, work habits, compensation and benefits and nonprivileged medical records or nurses' state notes relating to employee that the employer has in the employer's possession."

6

documents requested by the Plaintiff are necessary for the licensing process, only, and as such, do not address Ms. Lewis in her capacity as an employee. The Plaintiff, however, claims that some of the log entries contain personal information that was discussed between herself and her supervisor.

An issue of material fact exists as to whether the clinical supervision logs pertain to the Plaintiff's character or work habits thereby invoking 26 M.R.S.A. § 631.

*2. Monetary Damages and 26 M.R.S.A. § 631*

The count also agrees that 26 M.R.S.A. § 631 provides a mechanism whereby employees can sue for monetary damages. The pertinent part of the statute states:

> "Any employer who, following a request pursuant to this section, without good cause fails to provide an opportunity for review and copying of a personnel file, within 10 days of receipt of that request, is subject to a civil forfeiture of $ 25 for each day that a failure continues. The total forfeiture may not exceed $ 500. An employee, former employee or the Department of Labor may bring an action in the District Court or the Superior Court for such equitable relief, including an injunction, as the court may consider to be necessary and proper." 26 M.R.S.A. § 631 (2007).

The court finds that the plain language of the statute provides a mechanism for Ms. Lewis, as a former employee, to sue her former employer for monetary damages. Whether she is entitled to such an award because the supervision logs were part of her personnel file, and whether the Defendants had just cause for their refusal of Ms. Lewis' request requires the presentation of evidence at trial. Accordingly, Defendants' Motion for Summary Judgment on the 26 M.R.S.A. § 631 claim is DENIED.

**C. Defamation (Count III)**

The Plaintiff asserts that she was defamed by statements made between the following: Callain to Devine; Callain, Devine, and Demmons to each other and others; Devine to the Substance Abuse Board, Callain to the Board of Social Work and Licensure. (Second

Amended Complaint ¶ 28, 33-35 & 50.) With regards to these allegations of defamation, the Defendants assert immunity due to the existence of a conditional privilege. A conditional privilege allows a defendant to make a defamatory statement about another, as long as the statement was made to protect certain interests and the privilege is not abused.[4] *Restatement (Second) of Torts*, § 594 (Scope). A defendant, however, may be subject to liability if this privilege is abused. *Id.* § 599. Abuse by the defendant includes making a statement outside normal channels or with malicious intent. *See Rippett v. Bemis*, 672 A.2d 82, 87 (Me. 1996) (citing cases); *Restatement (Second) of Torts* § 599 cmt. a (1977)). Whether a defendant has abused his privilege is a question of fact. *Cole v. Chandler*, 2000 ME 104, ¶ 7, 752 A.2d 1189, 1194.

### 1. Normal Channels

The Law Court has not elaborated on the "normal channels" requirement other then to state that a conditional privilege can be lost when the publication of a defamatory statement is made "outside ordinary channels, excessive, improper, and not calculated to further [a third party's] interest." *Lester v. Powers*, 596 A.2d 65, 70 (Me. 1991). While the communication's made between the individual Defendants and organizations may have been necessary and useful, whether such communications were ordinary, excessive, improper, or for an improper purpose involves questions of material fact that can be developed through a trial.

### 2. Malicious Intent

For the purposes of defamation claims, malice means statements that a defendant knows to be false, those that are made with reckless disregard for its truth or falsity, or those made with spite or ill will. *Cole v. Chandler*, 2000 ME 104, ¶ 7, 752 A.2d 1189,

---

[4] These conditional privileges are described in Restatement (Second) of Torts, §§ 594-598(A).

1194. Here, there appears to be a discrepancy between Ms. Lewis' first six-month evaluation and the statements that were made in the verbal and written warnings, some of which were then republished to other employers of GWH, the Substance Abuse Board, and Board of Social Work and Licensure. Those who made the statements supervised the Plaintiff and had access to her personnel file including the contents of the first evaluation and the written warnings. The Plaintiff calls Ms. Devine's actions a "personal attack" which has come about as a result of comments the Plaintiff had made to Mr. Johnson, about Ms. Devine's husband caused. (Pl's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 4-5.) Ms. Devine's statements could have been a result of spite or ill will.

Because there are genuine questions of material fact as to whether the Defendants abused any conditional privilege, either by making statements outside the normal channels or by making statements with malicious intent, and therefore lost the privilege, summary judgment on this claim is DENIED.

**D. Intentional Infliction of Emotional Distress (Count IV)**

The Plaintiff asserts that the conduct of the Defendants was extreme and outrageous and has caused her severe emotional distress. (Pl's Complaint at ¶ 40 & 52.) She has only alleged mental injuries, not physical injuries. A claim for intentional infliction of emotional distress ("IIED") requires a plaintiff to establish that a defendant "intentionally or recklessly inflicted severe emotional distress, that [his] conduct was so extreme and outrageous as to exceed all possible bounds of decency such as would be regarded as atrocious and utterly intolerable in a civilized community, that [the] defendant['] s actions caused his emotional distress and that the distress is so severe that no reasonable man

9

could be expected to endure it." *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995) (citations omitted). *Rubin v. Matthews International Corp.*, 503 A.2d 694, 699 (Me. 1986). *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 16, 711 A.2d 842, 847.

The Defendants also allege that because Ms. Lewis did not produce sufficient evidence of injury[5] she is now precluded from any recovery associated with IIED. (Defs.' Mot. Summ. J. at 25.) "Although 'severe' emotional distress is usually manifested by 'shock, illness or other bodily harm,' such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional... infliction of emotional distress.'" *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979) (citing *Restatement (Second) of Torts* § 46, Comment k. (1965)). In appropriate cases, 'severe' emotional distress may be inferred from the 'extreme and outrageous' nature of the defendant's conduct alone. *Id.*

While this court is in agreement with the Plaintiff in that emotional distress does not require a physical manifestation of injury, whether this is an appropriate case for inferring severe emotional distress is questionable. As examples of when a court may infer emotional distress from conduct alone, the Restatements provides the following: falsely informing someone that their child has died, and informing someone that they are going to be lynched. *Restatement (Second) of Torts* § 46, Comment k. Simply giving someone a poor job performance review, even if done on numerous occasions and done with malicious intent is not extreme and outrageous conduct from which emotional distress can be inferred.

---

[5] Specifically, the Defendants assert that the Plaintiff's only evidence as to her emotion distress is her own testimony. This they assert, and the fact that she did not seek therapy, shows a lack of evidence regarding her injury.

Furthermore, a claim of intentional and negligent infliction of emotional distress requires "severe" emotional distress. Simply claiming that one is distressed as a result of another's actions is not enough to prove emotional distress. *See Giguere v. Ellis*, 1988 Me. Super. LEXIS 284, Civil Action Docket No. cv-87-294. Based on the party's briefs in support or in opposition of summary judgment and their accompanying statement of material facts, the court concludes that Ms. Lewis did not suffer "severe" emotional distress. Accordingly, Defendants' motion for summary judgment on this count is GRANTED.

### E. Interference with an Advantageous Contractual Relationship (Count V)

The alleged conduct given rise to the defamation claim could also give rise to a cause of action for interference with an advantageous contractual relationship. There must be a showing of intimidation or fraud or other misconduct such as undue influence. *See Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995); *Northeast Coating Technology Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1325 (Me. 1996).

Furthermore, this tort does not require an existing contract but may be based upon potential employment. The alleged facts in this case raise legitimate issues of fact regarding this cause of action. For this reason, a fact finder must resolve these issues. The Defendants' motion for summary judgment on this count is DENIED.

### F. Negligent Infliction of Emotional Distress (Count VI)

To state a claim for negligent infliction of emotional distress, the plaintiff must allege that the defendant was negligent, that is, that the defendant acted or failed to act in a manner which a reasonably prudent person would act; that emotional distress to the plaintiff was a reasonably foreseeable result of the defendant's negligent act; and, that the

plaintiff suffered serious emotional distress as a result of the defendant's negligence. *See, e.g., Packard v. Central Maine Power Co.*, 477 A.2d 264, 268 (Me. 1984). "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, P11, 722 A.2d 1269, 1272 (internal quotation marks omitted). As with the Plaintiff's claim for intentional infliction of emotional distress, the court finds that the Plaintiffs' injury as alleged does not constitute severe emotional distress.

*1. Workers' Compensation Act*

The Defendants also allege that they are immune for any intentional or negligent infliction of emotional distress claims because the Workers' Compensation Act bars such claims. In Maine, to the extent that intentional and negligent infliction of emotional distress claims "are premised on workplace conduct, they are barred by the Worker's Compensation Act's exclusivity provision." *Higgins v. The TJX Co., Inc. and the Concord Group, Inc., d/b/a/ A.J. Wright*, 331 F. Supp. 2d 3, 7 (D.Me. 2004) citing *Li v. C.N. Brown Co.*, 645 A.2d 606, 607-08 (Me. 1994); *see also Cole v. Chandler*, 2000 ME 104, ¶ 13, 752 A.2d 1189, 1196, stating "mental injuries constitute personal injuries within the meaning of the exclusivity provision of the Workers' Compensation Act and thus an independent claim is barred." The Workers' Compensation Act would bar those emotional injuries that arose during the course of Plaintiff's employment at GWH.

Because there is no issue of material fact that the Plaintiff did not sustain severe emotional distress or that the Workers' Compensation Act bars such claims, the Plaintiff's motion for summary judgment on Count VI is GRANTED.

## G. Punitive Damages

Based on Maine case law there is a sufficient basis for the issue of punitive damages to be decided by the fact finder. Giving all favorable inferences to the Plaintiff at this point in the proceedings, this court cannot rule as a matter of law that this is not a viable issue of fact. For this reason, the Defendants' motion for summary judgment on the issue of punitive damages is DENIED.

## CONCLUSION

Based on the courts findings and rulings above, the court hereby rules that the Defendants' motion for summary judgment with regards to Counts I, II, III, V, and VII are denied. The Defendants' motion for summary judgment with regards to Counts IV and VI are hereby granted.

DATE: November 26, 2007

Joseph Jabar, Justice
Maine Superior Court

13